MOBILE STEAMSHIP ASSOCIATION, INC., Plaintiff–Appellee,

v.

LOCAL 1410, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, AFL–CIO, Defendant,

International Longshoremen Association, AFL–CIO, Defendant–Appellant.

No. 90–7461.

United States Court of Appeals, Eleventh Circuit.

June 20, 1991.

John F. Janecky, Barker & Janecky, P.C., Mobile, Ala., Thomas W. Gleason, Maura R. Cahill, New York City, for defendant-appellant.

Richard G. Alexander, Mobile, Ala., for Local 1410.

Frank McRight, McRight, Jackson, Myrick & Moore, Mobile, Ala., for plaintiff-appellee.

Before ANDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant International Longshoremen Association, AFL–CIO ("ILA") appeals from the district court's ruling granting the application of Appellee Mobile Steamship Association, Inc. ("MSA") for a permanent injunction and denying ILA's motion for summary judgment. The district court enjoined ILA and its local Mobile, Alabama affiliate ("Local 1410")[1] from proceeding with arbitration of their dispute with MSA in a national forum, the Emergency Hearing Panel ("EHP"), until after completion of arbitration pursuant to the terms of a local collective bargaining agreement. The district court further ordered that "[n]o arbitration awards should impose on [MSA] or any of its member companies any obligation that is inconsistent with the terms and conditions of the [MSA]/ILA Local 1410 Collective Bargaining Agreement." *Mobile Steamship Ass'n, Inc. v. ILA,* No. 90–00037–T–H at 2 (S.D.Ala. May 24, 1990). For the reasons stated below, we vacate the judgment of the district court and re-

1. Local 1410, International Longshoremen's Association, AFL–CIO is not a party to this appeal.

mand for entry of summary judgment in favor of ILA.

## I.  FACTS

The origin of the instant dispute is the "containerization" technology that has revolutionized the shipping industry.  Although the increased use of large, reusable metal containers to transport cargo by ship has resulted in greater ease in handling and significantly reduced cost, the practice has also resulted in a reduction in the need for longshoremen to load and unload cargo. *See generally, N.L.R.B. v. International Longshoremen's Ass'n,* 447 U.S. 490, 493–96, 100 S.Ct. 2305, 2308–09, 65 L.Ed.2d 289 (1980).  Labor and management have attempted to solve the problems associated with the resulting decreased employment opportunities for longshoremen through collective bargaining.  As a result of such collective bargaining, the national union, ILA, and the carriers entered into a single Master Contract covering all of the Atlantic and Gulf Coast ports where ILA was the collective bargaining representative, including Mobile, for the 1980–83, 1983–86, and 1986–89 contract periods.  MSA, which is a trade association consisting, *inter alia,* of stevedore companies serving the Port of Mobile, also was a party to the 1980–83 and 1983–86 agreements.  The provision relevant to the instant case, included in the Master Contract's "Containerization Agreement" and "Rules on Containers," required carriers to contribute a royalty of $2.00 per ton of containerized cargo for eventual distribution as supplemental cash benefits to eligible ILA employees.

At the expiration of the 1983–86 Master Contract, MSA did not sign a new Master Contract covering the 1986–89 period.  Instead, MSA negotiated a collective bargaining agreement with ILA's local affiliate in Mobile, Local 1410, for the 1986–89 contract period (the "local agreement").  The local agreement included the following provision with respect to containers:

The parties agree to abide by the terms and conditions of any national agreement between the ILA and. the Carriers concerning the loading and unloading of Container Vessels and the stuffing and stripping of containers for such vessels.  Except as specifically provided otherwise in this Agreement, the terms and conditions of that agreement shall control.  Notwithstanding the foregoing, the parties further agree:
a.  The first royalty payment paid per ton of cargo in containers will be paid to eligible employees as a vacation benefit.
b.  The second and third royalty payments paid on containers will be contributed to the MSA/ILA Welfare Plan for the purpose of providing welfare benefits to eligible employees....

The change in the allocation of the container royalty payments accomplished by the local agreement is at the center of the present dispute.  In addition to the above provision, the local agreement also contains detailed provisions calling for local arbitration of disputes arising under it.

Although MSA was not a party to the 1986–89 Master Contract, it is a party, as is ILA, to an arbitration agreement entitled "Management–ILA Emergency Hearing Panel" covering the 1986–89 period (the "EHP Agreement").  The EHP Agreement calls for the EHP, a national arbitration panel made up of representatives from management and labor, to hear and resolve "all cases relating to the Containerization Agreement and Rules on Containers on an emergency basis at the earliest possible moment."  R1–11 Exhibit B, at 1.

ILA, contesting the royalty payment allocation set out in the local agreement, instituted arbitration proceedings in the national forum, EHP.[2]  Although MSA asserted that the EHP lacked jurisdiction, the EHP proceeded to the merits of the dispute.  After the EHP deadlocked on the merits, the matter was referred to the American Arbitration Association ("AAA") pursuant to EHP procedure.  However, before the

2.  .Pursuant to the EHP procedure, the parties first tried to resolve their dispute over the proper allocation of the container royalty payments locally.  However, when settlement negotiations at the local level broke down, the matter was placed on the EHP agenda.

AAA could hear the case, MSA filed the instant action in the district court seeking to enjoin further arbitration under the EHP Agreement. ILA responded with a motion for summary judgment. The district court granted the relief sought by MSA, concluding that the EHP, the national forum, lacked jurisdiction, and that the arbitration should proceed pursuant to the local agreement. The district court further ordered that any local arbitration award could not impose obligations inconsistent with the local agreement, effectively ruling on the merits of the dispute.

The issue on appeal is whether the district court correctly concluded that the EHP lacked jurisdiction. We conclude that the EHP, the national arbitration forum, is the proper forum for arbitration of the instant dispute. We also conclude that the district court erred by ordering relief that went to the merits of the controversy.

## II.  DISCUSSION

The primary issue is whether the proper forum for the instant arbitration is the national arbitration forum, EHP, or the local arbitration forum. The national union, ILA, entered into a Master Contract with the carriers under which the carriers would pay the $2 royalty for eventual distribution in cash to eligible ILA employees. In the Mobile port, MSA apparently was the entity through which such royalty payments were funneled for the benefit of the eligible ILA employees in the Mobile port area. MSA and the union have entered into a local agreement which provides for a distribution of these royalty payments different from the distribution provided for in the Master Contract. Although MSA is not a party to the Master Contract for the relevant period, it is a party to the EHP Agreement and thus has agreed to arbitrate before the national arbitration forum, EHP, any dispute relating to the Master Contract's provisions governing distribution of the royalty payments.

MSA argues that it should not be required to arbitrate before the national forum because MSA was not a party to the Master Contract, and therefore was not subject to that contract's provisions regarding the disposition of the container royalty payments. MSA makes this argument notwithstanding the fact that it signed the EHP Agreement, and thus agreed to arbitrate before the national forum any dispute relating to the "Containerization Agreement" and "Rules on Containers" (which of course include the Master Contract's royalty provisions).

The fallacy of MSA's reasoning is that it assumes the very fact at issue. In other words, it assumes that ILA's position is wrong *on the merits*. On the merits, ILA's dispute with MSA is over whether MSA properly bargained and agreed with Local 1410 to change the Master Contract's disposition of the container royalty payments. In other words, ILA challenges certain aspects of the validity of the local agreement and thus is arguing that MSA *is* bound by the Master Contract's container royalty provisions. ILA's challenge is in the nature of a claim that MSA has interfered with ILA's contractual relations regarding the royalty payments.

Seen in this light, it is clear that the dispute does "relat[e] to the Containerization Agreement and Rules on Containers," *i.e.,* the Master Contract's provisions regarding the disposition of the container royalty payments. MSA is a party to the EHP Agreement and has agreed to arbitrate in the national forum any dispute related "to the Containerization Agreement and Rules on Containers," which of course includes the Master Contract's provisions regarding the disposition of container royalty payments. The instant dispute is over which disposition of the container royalty payments is applicable, the Master Contract or the local agreement. Because ILA's contention is that the container royalties must be paid as cash supplements to eligible ILA employees pursuant to the mandate of the Master Contract and despite the contrary disposition provided for in the local agreement, the dispute clearly "relates" to the Master Contract. Therefore, as a party to the EHP Agreement, MSA is bound to arbitrate the instant dispute in the national forum.

MSA's argument—that because it was not a party the 1986–89 Master Contract, it is not required to proceed with EHP arbitration—is really an argument on the merits. MSA is apparently of the belief that ILA's argument regarding the applicability of the Master Contract provisions not incorporated into the local agreement is without merit. The district court evidently shared this view when it ordered that "[n]o arbitration awards should impose on [MSA] or any of its member companies any obligation that is inconsistent with the terms and conditions of the [MSA]/ILA Local 1410 Collective Bargaining Agreement." *Mobile Steamship Ass'n, Inc. v. ILA*, No. 90–00037–T–H at 2 (S.D.Ala. May 24, 1990). However, it is clear that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims ... even if [the union's claim] ... appears to the court to be frivolous...." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649–650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).[3]

Therefore, the district court erred not only by ordering local arbitration and enjoining further arbitration in the national forum, but also by ordering that resolution of the dispute be consistent with the terms of the local agreement. Accordingly, we VACATE the district court's judgment and REMAND for entry of summary judgment in favor of ILA.[4]

VACATED AND REMANDED.

3. ILA also notes that EHP, the national arbitration forum, has already resolved the jurisdictional issue, concluding that it does have jurisdiction. ILA argues that we should accord some deference to that decision. MSA disagrees, arguing that the jurisdiction of the arbitration forum is an issue which the court must decide. We need not address this disagreement. Our plenary review of the jurisdictional issue persuades us that the national forum does have jurisdiction, and thus we need not decide whether some deference is due to the EHP decision which also sustains its jurisdiction.

4. MSA does not contend that there are disputed issues of fact. Thus, our legal conclusions require the district court to grant ILA's motion for summary judgment.