Connolly, J.
Lawrence McGrew, a former professional football player, brought this action against the Patriots and its successor organization, seeking a binding declaration of the parties’ rights, liabilities, and legal relations under employment and compensation agreements they entered into several years ago; reformation of the written agreements on the grounds of mutual mistake and fraud; and the recovery of damages for defendants’ breach of the agreements and violations of the implied covenants of good faith and fair dealing, and for services rendered in quantum meruit. Kraft Patriots, one of the defendants, has now moved to dismiss the case or, in the alternative, to stay proceedings, alleging that according to the terms of the written contract between the parties, this dispute must go to arbitration. Kraft Patriots has also moved for sanctions. For reasons stated, the motion to stay proceedings is granted, and the motion for sanctions is denied.
BACKGROUND
The plaintiff made the following factual allegations in his amended complaint:
McGrew is a former professional football player who played for the Patriots and their successor, the New England Patriots, from 1980 to 1989. From 1980 to 1987, at McGrew’s request the Patriots would hold back a portion of his annual compensation and pay it in a subsequent year. McGrew would tell the Patriots how much compensation to hold back and when to pay it. McGrew entered into this arrangement for tax purposes. The withheld compensation, or a portion of it, was used to secure bank loans which the Patriots procured for McGrew and his wife.
In August, 1988, the Patriots and McGrew orally agreed to McGrew’s salary for the years 1988 to 1992. They also orally agreed that the Patriots would continue to hold back a portion of McGrew’s yearly salary, and to pay the withheld compensation in amounts and on dates selected by McGrew.
The Patriots then represented to McGrew that writings prepared by them were annual contracts setting forth this oral agreement, and failed to disclose that the contracts in fact differed from the oral agreement. The Patriots knew that such disclosure would correct McGrew’s mistaken belief about the contents of the contract. Relying upon the representations of the Patriots, and mistakenly believing that the writings set forth the terms of the oral agreement, McGrew signed them. The contracts actually contained addenda which allocated at least half of each year’s salary as deferred compensation payable in monthly installments over a 19-year period.[3]
The Patriots assigned the contracts to New England Patriots, L.P., for whom McGrew played the 1988 and 1989 football seasons. In 1989, the New England Patriots, L.P. made arrangements for McGrew and his wife to obtain a loan from Capitol Bank. The New England Patriots, L.P. agreed to assign $150,000 of McGrew’s 1988 salary to Capitol Bank.
McGrew left the New England Patriots, L.P. at the end of the 1989 playing system. In early 1990, the New England Patriots, L.P. paid Capitol Bank a portion of McGrew’s loan from the unpaid salary due him. The Patriots refused to pay the balance owed on the loan. Capitol Bank filed suit against McGrew and his wife for the balance due. The Court entered judgment against McGrew and directed the New England Patriots to pay over the present value of McGrew’s deferred salary. The Patriots owed $200,000 in deferred compensation, but paid only $35,177 to Capitol Bank.
McGrew brought this suit seeking declaratory relief, reformation of the contract, and damages for breach of contract, violation of the implied covenant of good faith and fair dealing, and quantum meruit.
Kraft Patriots brought the current motion before the court to dismiss or stay, claiming that the contracts between the parties require this dispute to go to binding arbitration. Specifically, they refer to Paragraph 20 of the contracts (“Paragraph 20”), which states: “Any dispute between Player and Club involv *317 ing the interpretation or application of this contract will be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement in existence at the time the event giving rise to any such dispute occurs. If no collective bargaining agreement is in existence at such time, the dispute will be submitted within a reasonable time to the League Commissioner for final and binding arbitration by him.”
Kraft Patriots also cites an addendum to the contract (“addendum”) which states: “Should any dispute, claim, or cause of action (“dispute”) arise concerning rights or liabilities arising from the relationship between the Player and the Club, the parties hereto agree that the exclusive jurisdiction for resolving such dispute is provided in Articles VII and IX of the Collective Bargaining Agreement.”
McGrew points out in his memoranda that there was no collective bargaining agreement in effect when the contracts were signed; the most recent collective bargaining agreement, which had expired on August 31, 1987, stated in part: “The arbitrator will not have jurisdiction or authority (a) to add to subtract from, or alter in any way the provisions of this Agreement or any other applicable document or (b) to grant any remedy whatsoever other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell NFL Player Retirement Plan, an order of compliance with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XI, Section 9 [Playing Rules].”
DISCUSSION
The Federal Arbitration Act (“F.A.A.”) states, “A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C.S. §2. This law is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 103S.Ct. 927, 941 (1983). Under the F.A.A., any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Id. In the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. A.T.&T. Tech., Inc. v. Communications Workers, 106 S.Ct. 1415, 1419 (1986). Further, an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Sweet Dreams Unlimited v. Dial-A-Mattress International, 1 F.3d 639, 641 (7th Cir. 1993).
This presumption in favor of arbitration extends to claims which have as their object nullification of the contract. Id. See also Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., supra at 941 and 943 (the presumption in favor of arbitrability extends to claims of fraud in the inducement, waiver, delay, and like allegations, as well as claims that the arbitration clause has already terminated with the contract).
Both paragraph 20 and the addendum require that the dispute between McGrew and the Patriots go to arbitration.[4] Paragraph 20 says, “Any dispute between the player and the club involving the interpretation or application of this contract” must go to arbitration. McGrew argues that a claim for reformation of specific contract language is not a claim involving the “interpretation or application of the contract.” In fact, though, the heart of the issue in dispute is whether the deferred compensation clause applies to the parties as written, which clearly involves the “application” of the contract. The arbitration clause in the addendum is even broader, requiring arbitration for “any dispute, claim, cause of action” between the parties. Under both clauses, this dispute must go to arbitration.
McGrew argues that his claims for reformation of the disputed clause cannot be arbitrated under another clause in the same contract he seeks to reform. While we agree with the court in Sweet Dreams Urilimited that the issue is somewhat metaphysical, we must also follow the holdings of it and other cases. These cases have said that a claim for rescission of a contract must be arbitrated under a broad arbitration clause. A claim for reformation is less drastic than a claim for rescission, and must also be arbitrated under a broad arbitration clause.
The plaintiff puts forth several other arguments about why Paragraph 20 and the addendum do not apply. He alleges that both clauses are ineffective because no collective bargaining agreement was in effect when the contract was executed. We disagree with his reasoning. Paragraph 20 clearly states that if no collective bargaining agreement is in effect, the dispute shall be submitted to the League Commissioner. Plaintiff argues that the commissioner would not be an unbiased decision-maker. He does not claim, however, that this provision was in any way different from the oral agreement; and he cannot escape terms that he agreed to. The arbitration clause in the addendum, on the other hand, does not make alternate provisions if no collective bargaining agreement is in effect. It states only that exclusive jurisdiction for any dispute between the parties “is provided in Articles VII and IX of the Collective Bargaining Agreement.” Given the specificity of this reference, it is clear the terms of the Collective Bargaining Agreement apply, even though the Agreement itself had expired.
*318 Plaintiff further argues that the terms of the Collective Bargaining Agreement cannot be used because the Agreement does not allow the remedy sought, which is reformation of the contract. A contract may limit remedies. Further, the true remedy the plaintiff seeks is money he believes is due to him under the contract. While under the terms of the Collective Bargaining Agreement an arbitrator may not reform the contract, she is empowered to award money to the plaintiff.
Finally, the plaintiff argues that his claim for quantum meruit does not involve the contract, and so the contract clauses requiring arbitration do not apply. However, an arbitration clause may not be evaded by artful pleading. Ripmaster v. Toyoda Gosei, Co., Ltd., 824 F.Supp. 116, 118 (E.D. Mich. 1993). Broad arbitration clauses encompass claims in contract and tort, including claims for unjust enrichment. Id. The plaintiff cannot avoid the arbitration clauses through an equivalent claim for quantum meruit.
Both the F.A.A. and its Massachusetts counterpart direct that a court action shall be stayed if an order for arbitration issues. 9 U.S.C.S. §3; G.L. c. 251, §2(d). The court therefore orders the plaintiffs court action stayed pending arbitration.
The defendant’s motion for sanctions is denied.
ORDER
For the foregoing reasons, it is therefore ORDERED that the defendant’s motion to stay proceedings is ALLOWED, and the defendant’s motion for sanctions is DENIED.

 McGrew's signature appears on the same page as these terms, which are set out clearly in plain English.

 Several cases discuss somewhat esoteric distinctions in the specific language of arbitration clauses. We note only that these cases support a broad reading of both Paragraph 20 and the addendum.