TRT TELECOMMUNICATIONS CORP., Plaintiff,

v.

LOCAL 111, AMERICAN COMMUNICATIONS ASSOCIATION, COMMUNICATIONS TRADE DIVISION, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant.

Civ. A. No. 89–0658.

United States District Court, District of Columbia.

May 19, 1989.

Isaac N. Groner, Washington, D.C., for plaintiff.

Jonathan G. Axelrod, Washington, D.C., Earl R. Pfeffer, Susan Davis, New York City, for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiff TRT Telecommunications Corp. ("TRT") seeks to enjoin the arbitration of a labor dispute with its employees' union, defendant Local 111, arising out of the sale of a TRT operation located in Fort Lauderdale, Florida, known as the "Phone Room." Local 111 counterclaims that TRT has violated the parties' collective-bargaining agreement by refusing to submit the dispute to arbitration. The Court has jurisdiction under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and has consolidated the hearing on the preliminary injunction with the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. The parties have now filed fully-briefed cross-motions for summary judgment and the Court heard arguments on the motions on May 18, 1989. For the reasons set forth below, the Court shall deny the preliminary injunction and grant, in part, Local 111's motion for summary judgment.

## I. BACKGROUND

The material facts are undisputed. TRT is a communications services corporation specializing in the international electronic transmission of written communications. Local 111 is the certified collective bargaining representative of TRT's employees, including the bargaining unit in Fort Lauderdale. TRT and Local 111 are parties to a collective bargaining agreement ("the Agreement") governing their labor relations.

On April 19, 1988, TRT sent Local 111 a letter to "confirm the advice previously given ... that TRT contemplates discontinuing its phone room operations located at its Fort Lauderdale facility." A dispute between the parties arose quickly thereafter regarding whether Telex Services, Inc., the prospective purchaser of the Phone Room operation, would be required to recognize Local 111 and to adhere to the Agreement.

Article XI of the Agreement provides that

[i]n the event of a merger or sale of [TRT's] operations as a going business ..., the purchaser acquiring the operations shall recognize the Union as the bargaining representative of the Company employees covered by the terms of this Agreement and shall maintain the terms and conditions of this Agreement.

That Article also requires TRT "to encourage a meeting between the purchaser and [Local 111] to discuss the purchaser's plans"; and to provide Local 111 with copies of any applications for regulatory agency (*i.e.*, Federal Communications Commission) approval necessitated by the transaction. Upon Local 111's invocation of Article XI, TRT sent another letter on May 20, 1988, that reads in relevant part:

Please be advised that TRT disagrees with your interpretation of Article XI and believes that the Article of the agreement is not applicable to any sale by TRT of its Phone Room Operation. Accordingly, please be further advised that TRT does not intend to give Local 111 the name of any company with whom it may negotiate for the sale of the Phone Room Operation and will not introduce any such possible purchaser to Local 111. Also, TRT does not believe that in connection with any sale of the Phone Room Operation it is required to provide Local 111 with copies of filings it might make with the FCC.

Local 111 thereupon filed a grievance with TRT pursuant to Article IX of the Agreement, on May 31, 1988. In response, on July 1, 1988, TRT filed a demand for arbitration with the American Arbitration Association ("AAA"), pursuant to Article X of the Agreement, which confers to arbitration "disputes regarding the meaning, application, interpretation or violation of any specific provision of" the Agreement. Jerome H. Ross, Esquire, was selected as the arbitrator and set an initial hearing date for November 2, 1988, which was later rescheduled to December 20, 1988, at Local 111's request. In the interim, Local 111 on November 28, 1988, sent TRT a request for information in 21 categories relating to the Phone Room transaction, stating that such information was "relevant to both the [pending] grievance and an unfair labor practice charge which Local 111 may file." TRT objected to this information request in a December 16, 1988, letter, stating that the information did not appear relevant to the pending arbitration proceeding and asking Local 111 to specify its need for each item of information.

Local 111 did not respond to this letter, but instead, after securing a further extension of the arbitration hearing, filed two charges of unfair labor practices against TRT with the National Labor Relations Board ("NLRB"). One charge (No. 12–CA–13268–1) alleged that TRT's refusal to provide the information requested on November 28, 1988, violated the National Labor Relations Act ("NRLA"); and the other (No. 12–CA–13268) alleged that TRT's refusal to transfer any of the bargaining unit employees in the Phone Room operation, and Telex Services' failure to assume the TRT–Local 111 Agreement also violated the NRLA. The gravamen of the latter charge, however, was that Telex Services was the alter ego of TRT, as it alleges that "TRT maintains ultimate control over all aspects of the phone room operations and reaps ongoing financial benefits."

In response to Local 111's charges with the NLRB, TRT on February 28, 1989, sought to withdraw its demand for arbitration on the basis of Article IX of the Agreement, which provides that

[d]isputes that are within the jurisdiction of the Equal Employment Opportunity Commission or the National Labor Relations Board shall not be the subject of a grievance and shall not be arbitrable.

After Local 111 objected to the withdrawal, the AAA on March 9, 1989, informed the parties that it was referring the arbitrability question to the arbitrator and that the hearing, then set for March 28, 1989, would proceed as scheduled. TRT then sought injunctive relief from this Court in the present action, filed March 13, 1989. The Court held a status conference on March 17, 1989, and was informed by the parties that the arbitrator had at Local 111's request again postponed the hearing to May 25, 1989. The Court accordingly set the matter for argument on May 18, 1989.[1]

In the interim, the NLRB on April 3, 1989, took action on Local 111's charges, dismissing one without a hearing and issuing a "complaint and notice of hearing" on the other. Specifically, the NLRB Regional Director dismissed the alter ego charge, reasoning in relevant part that:

[t]he evidence adduced during the investigation is insufficient to support the conclusion that the Employer violated the Act by selling or transferring its telephone room operation to avoid its obligations under the collective-bargaining agreement; by refusing to transfer bargaining unit employees to the purchaser of its phone room operation; by not requiring the purchaser of its phone room operations to adopt the collective-bargaining agreement; by creating an alter ego relationship with the purchaser of its phone room operations in order to avoid its collective bargaining obligations; and by refusing to bargain about its decision or the effects of its decision to sell the phone room operation, as alleged.... Any failure by the Employer to require the purchaser to adopt the existing collective-bargaining agreement is a matter of contract interpretation and, absent any evidence that the Employer is attempting to undermine its entire contract with the Union, the mere failure to abide by the contract is a matter more properly the subject of arbitration or court proceedings than an unfair labor practice charge. A mere breach of contract, by itself, does not constitute a violation of the Act.

No. 12–CA–13268.[2]

On the remaining charge, however, the NLRB Regional Director issued a complaint, finding a probable violation of the NLRA in TRT's refusal to supply the requested information on the Phone Room transaction. No. 12–CA–13268–1. TRT answered the NLRB complaint on April 18, 1989, denying any violations. The complaint remains pending before the NLRB and has been scheduled for a hearing on the merits on June 21, 1989.

The issues presently before the Court boil down to whether Local 111 by filing its charges with the NLRB has forever lost its right under the Agreement to subject the Phone Room-related disputes to arbitration. Central to that inquiry is the effect of Article IX of the Agreement's exclusion from arbitration of matters "within the jurisdiction of" the NLRB, in light of Local 111's recourse to the NLRB and NLRB's rulings.

II. ANALYSIS

 The Court begins with the well-settled proposition that "arbitration, rather than strikes or lockouts, [i]s the preferred method of resolving disputes arising during the term of a collective bargaining agreement." *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). At the same time, however, an arbitrator acquires jurisdiction over a dispute only from the consent of the parties, and a party cannot be required to submit a matter to arbitration where that consent is lacking. *Id.* 106 S.Ct. at 1418. Moreover, arbitrability is, in the first instance, one for the Court to decide, for "[t]he willingness of parties to enter into agreements that provide for arbitration of specified disputes

---

1. At argument, however, counsel for Local 111 represented that it has sought a further adjournment of the hearing date, pending final resolution of the complaint before the NLRB, discussed below.

2. Following this ruling, Local 111 inquired of TRT as to whether it still objected to the arbitrability of the contract issue, and TRT responded that it continued to object.

would be 'drastically reduced,' ... if a labor arbitrator had the 'power to determine his own jurisdiction....'" *Id.* at 1419–20 (quoting Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1509 (1959)).

The Court's role in the posture of this case is nonetheless a narrow one. The applicable standard has been articulated as follows: "where it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Under this narrow standard, weighted in favor of arbitrability, the Court must determine only whether "because of express exclusion or other forceful evidence," *id.* 106 S.Ct. at 1420, there is no reasonable interpretation of the Agreement which would permit arbitration.

▮ Firstly, the Court finds that the Article IX exclusion is inherently ambiguous in that reasonable men could differ over the meaning of "within the jurisdiction of the" NLRB. Indeed, there are at least three reasonable interpretations of this exclusion. The most preclusive interpretation would exclude any matter that is found to be within the NLRB's jurisdiction "by definition" and regardless of whether it is actually made the subject of an unfair labor practice charge with the NLRB. A second interpretation is that the exclusion is triggered by the mere filing of a charge with the NLRB, regardless of whether the NLRB ultimately rules on the merits. Finally, a third interpretation, which the Court adopts, is that Article IX does not preclude arbitration of those disputes which the NLRB dismisses for lack of jurisdiction. TRT has submitted parol evidence of the bargaining history of Article IX, and Local 111 does not object to consideration of this evidence for purposes of this issue. Because the Agreement is inherently ambiguous, it is proper to consider such evidence for the purposes of interpretation only.

The first interpretation that certain matters are by definition "within the jurisdiction of" the NLRB and thus excluded from arbitration *ab initio* is belied by the other terms of the Agreement, its bargaining history, and the parties' actual conduct. The bargaining history establishes that TRT's concern was to avoid simultaneously litigating matters arising from the same conduct before both an arbitrator and a governmental agency, and not just avoiding the potential for conflicting rulings.[3] To this extent, Article IX established, in effect, an election of forums, if not remedies.

The provision gave Local 111 a choice to challenge TRT's conduct in one forum or the other. And it is clear that Local 111 understood this, as it was so concerned over the legality of having that choice that it negotiated a clause in Article IX wherein TRT "agree[d] to indemnify and hold [Local 111] harmless against any judgments issued by any Court against [Local 111] based upon a finding that it was unlawful for [Local 111] to have entered into a collective bargaining agreement with [TRT] which excludes from the coverage of its grievance and arbitration provisions disputes that are within the jurisdiction of the Equal Employment Opportunity Commission or the [NLRB]."

The conduct of the parties also contradicts the categorical exclusion of matters within the NLRB's jurisdiction, as TRT itself voluntarily submitted the dispute to arbitration, without objection from Local 111; and TRT only sought to withdraw from the arbitration when Local 111 filed its charges with the NLRB. In sum, there

---

**3.** As to claims that could have been brought before the Equal Employment Opportunity Commission ("EEOC"), TRT was already protected against double liability by a provision in Article XV (Non–Discrimination) predating the exclusion in Article IX: "Whenever conflicting decisions are rendered relative to any alleged violation of this article by an arbitrator and a court or governmental agency, the decision of the court or governmental agency shall prevail."

is simply no evidence that the parties sought to assign jurisdiction between an arbitrator and the NLRB on the basis of the legal theory asserted, or unrealistic notions of hermetically sealed jurisdiction. Article IX was intended to apply to any claims arising out of the same conduct, whether or not such claims were concurrently "within the jurisdiction of" the NLRB.

The second possible interpretation of the exclusion would bar arbitration even if the charge was dismissed by the NLRB for complete want of jurisdiction. Upon questioning at argument, TRT's counsel stated that it did not take this position, and that a clear dismissal for lack of jurisdiction would permit arbitration of the dispute. TRT's counsel further stated that arbitration would be permitted on specific matters that the NLRB dismisses for lack of jurisdiction, even if the NLRB assumes jurisdiction over other matters in the same charge. Thus refined, therefore, TRT's argument is that, while a ruling on the merits by the NLRB precludes further arbitration, a dismissal for lack of jurisdiction by the NLRB does not. The Court finds this third position most reasonable in light of the record.

In particular, the bargaining history contains a proposal by TRT that would have addressed the very scenario here at issue. That proposal provided that

[t]he initiation and/or pendency of a proceeding or action before a governmental agency or a court automatically will remove any dispute between the company and the Union or any employee relating to the same subject matter from the grievance and arbitration provisions of this Agreement. Should any such proceeding or action before a governmental agency or court be dismissed solely for the reason that the governmental agency or the court *does not have jurisdiction*, then the grievance and arbitration provisions of this Agreement shall become applicable to the dispute relating to the same subject matter....

(Emphasis added). The proposal was not rejected by Local 111 because of its substance, but on the grounds that it was simply repetitious and unnecessary, as Local 111 felt it was already covered by the language of Article IX.

▉ In light of this stipulated bargaining history, the Court finds that Article IX is subject to a reasonable interpretation which would permit arbitration. The intent of the parties was apparently that a claim that NLRB dismisses for lack of jurisdiction could be submitted to further arbitration, while a ruling on the merits by NLRB would preclude further arbitration. The issue thus becomes whether the NLRB has ruled on the merits of the entire dispute, as TRT argues, or whether the NLRB has left open at least the contractual issue by stating that "[a]ny failure by [TRT] to require the purchaser to adopt the existing collective-bargaining agreement is a matter of contract interpretation and ... the mere failure to abide by the contract is a matter more properly the subject of arbitration or court proceedings than an unfair labor practice charge." The Court's review would certainly have been facilitated had the Regional Director made his ruling clearer in this regard. Nonetheless, the Court finds that this ruling itself is subject to a reasonable interpretation that it dismissed the contractual issue for lack of jurisdiction.

The arbitration may, therefore, go forward limited solely to the contractual issue whether the Phone Room transaction fell within Article XI of the Agreement as "a merger or sale of the Company's operations as a going business." The Court thus rejects both TRT's argument that the NLRB's actions have a totally preclusive effect on further arbitration, and Local 111's argument that the NLRB's actions have no effect at all. As discussed above, the most reasonable interpretation of the Agreement is that it does not preclude arbitration of claims which the NLRB has dismissed for lack of jurisdiction.

However, Local 111 shall be bound by its election to proceed in the NLRB as to the adverse ruling on the merits of its alter ego argument, as Local 111 cannot "have its cake and eat it too." The NLRB clearly assumed jurisdiction over and ruled on the

**6**

merits of this issue after an investigation. Local 111, therefore, may litigate this issue *only* in the NLRB; regardless of what new evidence, if any, surfaces as a result of the NLRB's ultimate ruling on the request for information. Furthermore, the arbitrator must also determine whether he can proceed with arbitration of the contractual issue without relitigating the issue still pending before the NLRB.

### III. CONCLUSION

In sum, the Court holds that the Agreement is susceptible to a reasonable interpretation that would allow the arbitration of the contractual issue whether Article XI of the Agreement applies to the Phone Room transaction.

The Court shall accordingly deny TRT's motion for a preliminary injunction and grant Local 111's motion for summary judgment to extent of declaring arbitrable the contractual issue left open by the NLRB. A conforming order accompanies this memorandum opinion.

### ORDER

In accordance with the memorandum opinion issued herewith, it is this 19th day of May, 1989,

ORDERED THAT plaintiff's motion for a preliminary injunction shall be DENIED; and it is

FURTHER ORDERED THAT defendant's motion for summary judgment shall be GRANTED, IN PART, as follows: the arbitrator shall have jurisdiction to consider solely the contractual issue of whether the Phone Room transaction is covered by Article XI of the Agreement, as "a merger or sale of [TRT's] operations as a going business...." All further relief is DENIED, and this case is DISMISSED.