**GASTON ANDREY OF FRAMINGHAM, INC., Plaintiff,**

v.

**FERRARI NORTH AMERICA, INC., Defendant.**

**No. CIV. A. 97–11411–GAO.**

United States District Court, D. Massachusetts.

Oct. 9, 1997.

**19**

Allan R. Curhan, Maria C. Avellaneda, Paul M. Harris, Gadsby & Hannah LLP, Boston, MA, for Plaintiff.

Rory Fitzpatrick, Kirkpatrick & Lockhart, Boston, MA, Jason Isralowitz, Kirkpatrick & Lockhart, New York City, for Defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

Gaston Andrey of Framingham, Inc. ("Gaston Andrey") has operated a Ferrari dealership in Framingham, Massachusetts, since 1981. In May 1997, Ferrari North America, Inc. ("Ferrari") informed Gaston Andrey that it was terminating the dealership franchise. In response, Gaston Andrey brought suit alleging that Ferrari did not have good cause to terminate the franchise agreement. *See* Mass. Gen. L. ch. 93B, § 4 ("chapter 93B"). Ferrari has now moved to stay this action pursuant to 9 U.S.C. § 3, asserting that un-

der the parties' agreement Gaston Andrey must submit this dispute to arbitration.

*Background*

In January 1985, Gaston Andrey and Ferrari entered into a "Dealer Retail Sales and Service Agreement," which included Ferrari's "Dealer Standard Provisions." The Dealer Standard Provisions require that "any and all disputes arising out of or in connection with this Agreement shall be settled by arbitration." Jackling Aff., Ex. B, ¶ 18(h)(1) [1]. The Agreement as originally executed had a one-year term, but it was subsequently extended several times.

In January 1993, the parties entered into a "Dealer Operating Requirements Agreement" which again incorporated the Dealer Standard Provisions. This agreement appointed Gaston Andrey as a Ferrari Dealer for 1993. In November 1993, Ferrari sent a letter to all dealers, including Gaston Andrey, informing them that Ferrari was launching a "Dealer Reorganization Program." Because of the time it would take to implement the program, Ferrari advised that it was extending all its dealer agreements until June 30, 1994.

In June 1994, Ferrari offered Gaston Andrey a new dealership agreement to be effective as of January 1, 1995, subject to the conditions that it relocate its operations to the Medford, Massachusetts, area and increase its credit line. Jackling Aff., Exs. G, I. Ferrari informed Gaston Andrey that it "will continue to operate for the remainder of [1994] in accordance with the terms and conditions of our current dealer agreement." Jackling Aff., Ex. G. In September 1994, Ferrari again wrote to Gaston Andrey reiterating that Ferrari was prepared to offer Gaston Andrey a new dealer agreement as of January 1, 1995, provided Gaston Andrey relocated to an acceptable facility. Jackling Aff., Ex. H.

---

**1.** Paragraph 18(h) of the Dealer Standard Provisions provides that

(1) Subject to the provisions of any applicable federal, state or local law, regulation or ordinance, any and all disputes arising out of or in connection with this Agreement shall be settled by arbitration in New York City in accordance with the rules of the American Arbitration Association.

(2) Any claim by Dealer that Ferrari NA did not have good cause for termination of this Agreement, has failed to act in good faith or has acted improperly in terminating this Agreement under the laws of the jurisdiction in which Dealer is located ... shall be submitted to arbitration....

For approximately the next two years the matter was in flux as the parties corresponded about what might be, or might not be, an acceptable facility. Throughout, Gaston Andrey continued to operate as a Ferrari dealer. In April 1997, Gaston Andrey wrote to Ferrari objecting to Ferrari's requirements, in particular complaining that its obtaining a larger line of credit "was not a prerequisite of the current or pending Dealer Franchise Agreement." Jackling Aff., Ex. M. In May 1997, Ferrari informed Gaston Andrey that it was terminating its dealership franchise because Gaston Andrey had not met Ferrari's conditions.

*Discussion*

■ The Federal Arbitration Act ("FAA") requires courts to stay a suit or proceeding if the issue is referable to arbitration under an agreement in writing. 9 U.S.C. § 3 (1996).[2] The FAA creates the presumption that a contractual arbitration clause should be enforced unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). However, the question of whether the parties agreed to arbitrate is one to be decided by the court, not the arbitrator. *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418–19.

Gaston Andrey's contention is that it has not had a written franchise agreement since the 1993 agreement expired, and therefore there is no effective agreement compelling it to arbitrate this dispute. Gaston Andrey

admits, as it must to invoke the protection of chapter 93B, that it did have a franchise agreement with Ferrari through May 1997,[3] but it says that that parol agreement did not include an agreement to arbitrate. The argument is rejected for two reasons.

■ First, Gaston Andrey cannot so readily jettison the unwanted terms of the last written expression of the dealership agreement. In a provision directly implicated by the present dispute, that agreement incorporated the Dealer Standard Provision that "[a]ny business relations of any nature whatsoever undertaken between Ferrari NA and [Gaston Andrey] after the expiration of this Agreement ... without a written instrument evidencing the continuation of such business relations ... shall nonetheless be governed by the applicable terms and conditions of this Agreement." Jackling Aff., Ex. B, ¶ 13(b). The parties thus *did* agree in writing to continue the arbitration clause in effect as their business relationship continued, with or without a renewal of a written dealership agreement.

■ Second, even if they had not so agreed, the caselaw directs that once the existence of the agreement to arbitrate is established to the satisfaction of the court, the scope of the arbitration obligation is a matter to be decided by the arbitrator. *Mercury Constr.,* 460 U.S. at 24, 103 S.Ct. at 941. There is no doubt here that the parties had agreed in their written franchise agreement to submit to arbitration "any and all disputes arising out of or in connection with this Agreement." Jackling Aff., Ex. B, ¶ 18(h)(1). Whether the obligation to arbitrate endured as the parties continued their business relationship without a renewed written franchise agreement is a dispute "arising out of or in connection with" the last written agreement

---

**2.** 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been

had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**3.** In his complaint, Gaston Andrey alleges that Ferrari "intended to terminate the Ferrari Dealer Agreement between plaintiff and defendant" and such termination was not for good cause as required by Mass. Gen. L. ch. 93B, § 4(3)(e).

they had. *See National R.R. Passenger Corp. v. Boston and Maine Corp.*, 850 F.2d 756 (D.C.Cir.1988) (holding that the question whether an arbitration clause continued to apply to a dispute after the parties' basic written agreement had expired was a matter to be determined by the arbitrator).

■ There is no doubt that if there is a continuing obligation to submit any disputes to arbitration, this dispute is one that must be submitted. The arbitration clause in question specifically encompasses a claim that Ferrari did not have good cause to terminate the franchise. Jackling Aff., Ex. B, ¶ 18(h)(2).

For these reasons, this action shall be stayed, pending the conclusion of the parties' arbitration.

It is SO ORDERED.