JOURNAL ENTRY AND OPINION
{¶ 1} This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1.
 {¶ 2} Plaintiffs-appellees Barbara Hardwick ("Hardwick") and Carmen Beverly ("Beverly") commenced this action for discrimination against their former employer, defendant-appellee The Sherwin-Williams Co. ("defendant"). Defendant moved the trial court to stay proceedings and to compel plaintiffs to submit their discrimination claims to arbitration. Defendant appeals from the trial court's denial of that motion. For the reasons that follow, we affirm.
 {¶ 3} Both plaintiffs worked for defendant for many years. Beverly and Hardwick served as Sherwin-Williams employees for approximately seventeen and twenty years, respectively. At some undetermined point during plaintiffs' employment, Sherwin-Williams created a "Problem Resolution Procedures" ("PRP") leaflet. In part, the one-page leaflet provides that the PRP "may be used by employees to challenge unresolved differences regarding application of Company policies, procedures or practices which affect their employment situation, and will be the exclusive method for addressing the work-related issues as they arise * * * Further understand that if this procedure is not used, it may preclude employees from pursuing any legal rights they may have in court or in other forums." (R. 8, Ex. 1, emphasis added). The policy applies unilaterally to the employees because "it does not cover any legal claims that the Company may have against its employees." Id.
 {¶ 4} Also, the leaflet clearly disclaims the existence of any type of contract either expressed or implied as follows: "[t]he Problem Resolution Procedures do not create, and shall not be construed to create, any contract of employment, either expressed or implied. These procedures do not in any way alter the `at-will' status of any individual's employment. `At-will' means that an employee may resign at any time, and Sherwin-Williams may discharge an employee at any time with or without cause." Id.
 {¶ 5} While the leaflet provides that "[a]ll regular full and part-time employees at the Headquarters Site are eligible to use the Problem Resolution Procedures * * *", the terms do not explicitly condition continued employment upon use of the procedures. Id, emphasis added. There is no record evidence indicating that any employee has ever been or would be terminated for failure to comply with the procedures.
 {¶ 6} In 1999, and subsequent to receiving Harwick's complaints, defendant purportedly federal expressed her a copy of the "Problem Resolution Procedure, Non-harassment policy" and "encouraged" her "to use the process if [she did] have issues." (R. 8, Ex. 3). Likewise, there is evidence that Beverly knew, subsequent to making her complaints, that defendant "want[ed] her to participate in the Problem Resolution Process * * *." (R. 8, Ex. 2). Defendant's correspondence to plaintiffs contained in this record fails to refer to the procedures as exclusive remedies and does not condition the women's continued employment on their agreement to use the procedures. There is no evidence in the record indicating that either plaintiff assented, or otherwise agreed, to use the PRP as the sole means of redress.
 {¶ 7} Plaintiffs each allege that they suffered sexual harassment and other tortious misconduct during their respective employments with defendant. Both claim that defendant's failure to effectively remedy their complaints resulted in their constructive discharges in 1999 and 2000. Both advanced claims against defendant first through the U.S. Equal Employment Opportunity Commission and then through the complaint filed in this matter in the Cuyahoga County Court of Common Pleas. In both instances, defendant sought to compel plaintiffs to submit to arbitration based on the terms of the above-detailed leaflet. In this case, the trial court denied defendant's efforts to stay the proceedings and to compel arbitration. It is from this ruling that defendant appeals, assigning the following assignment error for our review:
 {¶ 8} "I. The trial court erred in refusing to stay the proceedings below and compel appellees to arbitrate their claims, because a valid and enforceable arbitration agreement existed between appellees and appellant The Sherwin-Williams Co. (`Sherwin-Williams')."
 {¶ 9} In its sole assignment of error, defendant alleges that the trial court erred in denying its motion for stay of proceedings and to compel arbitration. We disagree.
 {¶ 10} In urging reversal, defendant primarily urges that plaintiffs' continued employment after receiving knowledge of the PRP provides the requisite consideration to support the alleged arbitration agreement. Because we find a lack of mutual assent dispositive of this error, we do not reach the issue of consideration or lack thereof.
 {¶ 11} It is well settled that an arbitration agreement will not be enforced if the parties did not agree to the clause. Harmon v. PhillipMorris Incorporated (1997), 120 Ohio App.3d 187, 189[1], quoting ATT Technologies, Inc. v. Communications Workers of America, 475 U.S. 643
(1986) ("`a party cannot be required to submit to arbitration any dispute which he has not agreed to so sumbit'"); see, also, Ervin v. AmericanFunding Corp. (1993), 89 Ohio App.3d 519.[2]
 {¶ 12} In Harmon, an employer distributed a brochure containing exclusive remedies for resolving employment termination disputes. That employer further required the employees to admit receipt of same by written acknowledgment. In that case, the employer allegedly gave its employees the option to agree to the dispute resolution program or reject the program and work elsewhere. Harmon, 120 Ohio App.3d at 190. This Court reversed the trial court's decision to stay proceedings pending arbitration. This court rejected the notion that the employee's acknowledgment of the pamphlet amounted to acceptance of the modification of employment terms. We instead found that the employee "merely acknowledged his receipt and understanding of the items presented to him. He never expressed assent to those terms." Id. Thus, without a meeting of the minds, the parties had not formed a valid contract.[3]
 {¶ 13} The facts before us now present an even more compelling case for finding a lack of mutual assent than those examined in Harmon. Primarily, neither plaintiff signed or acknowledged receipt of the PRP at the time of its distribution. Accordingly, as Harmon found that an acknowledgment did not equate with mutual assent, the total absence of even an acknowledgment is indicative of the lack of mutual assent.
 {¶ 14} Also, some of the terminology defendant used to describe the PRP arguably made it seem optional, such as, "[t]hese procedures may
be used by employees * * *"[4] and "[a]ll regular full and part-time employees * * * are eligible to use the Problem Resolution Procedures * * *." (Emphasis added). The leaflet advises that failure to use the procedures "may preclude employees from pursuing any legal rights they may have in court or in other forums." (Emphasis added). Nowhere in the leaflet does it suggest that employees must agree to comply with the procedures in order to continue employment with defendant. Despite record evidence of correspondence from defendant to the plaintiffs on the topic of the PRP, defendant never mentions the alleged binding or mandatory nature of the PRP. Rather, defendant simply indicates the PRP "remains available" to plaintiffs and/or "encourages" the plaintiffs to use the PRP. Nowhere in the record can we find any agreement by either of the plaintiffs to be bound by the PRP as their exclusive remedy.
 {¶ 15} In Harmon, we cited the lack of mutual assent as grounds for the unenforceability of an arbitration clause. Under the same rationale, we refuse to force arbitration on plaintiffs here due to the absence of any evidence of mutual assent. Plaintiffs never manifested an assent to arbitrate these disputes. Plaintiffs had no reason to object to the terms or existence of the PRP.[5] Defendant never indicated that it would terminate anyone who did not wish to comply with the PRP. Defendant never solicited, required, or obtained plaintiffs' assent to the PRP. As such, the mere fact that the plaintiffs continued working for defendant in and of itself fails to provide sufficient evidence of an agreement to be bound to arbitrate disputes through the PRP.
 {¶ 16} Based on the language defendant chose to employ in describing the PRP to its employees, we reject defendant's contention that such procedures were clear and unambiguous, mandatory conditions of employment. In addition, we find a lack of evidence to establish that either plaintiff mutually assented to the PRP. Consequently, we find that the record supports the trial court's decision to deny defendant's application to stay proceedings and to compel arbitration. The assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and DIANE KARPINSKI, J., concur.
[1] Contrary to defendant's belief, Harmon remains authority precedent in this district notwithstanding the subsequent decision in SwagelokCompany v. Young, 2002 Ohio 3416, Cuyahoga App. No. 78976. Swagelok
involved the enforceability of a non-compete provision in an employee agreement signed by the plaintiff in that case. Swagelok involved the issue of whether continued employment in an at-will relationship constituted adequate consideration to support a post-hire non-compete clause. Swagelok did not concern the issue of mutual assent. Therefore, because Harmon does address mutual assent, it continues to provide precedential guidance in this district.
[2] Because neither of the plaintiffs signed any agreement to arbitrate, defendant's reliance on cases involving signed agreements is misplaced. E.g., Dunn v. LM Building (Oct. 26, 2000), Cuyahoga App. No. 77399.
[3] See Restatement (Second) of Contracts, Sections 17, 22 and 71, quoted in Harmon, 120 Ohio App.3d at 190.
[4] This language contradicts other terminology that purports to make the procedures "the exclusive method for addressing work-related issues as they arise" which in turn conflicts with the provision that the procedure "does not cover any legal claims that the Company may have against its employees."
[5] For this reason, defendant's reliance on Circuit City Stores v.Adams (2000), 532 U.S. 105 is misplaced. In that case, the employee signed an employment application that contained the following provision: "`I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort.' App. 13 (emphasis in original)." Id. at 109. In this case, neither plaintiff signed anything regarding the PRP.