**MEDTRONIC, AVE, INC., Plaintiff,**

v.

**CORDIS CORPORATION, Defendant.**

**No. C.A.NO.03–402–SLR.**

United States District Court,
D. Delaware.

Sept. 5, 2003.

---

**340**

Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for plaintiff/counter–defendant.

Steven J. Balick, Ashby & Geddes, Wilmington, DE, for defendant/counter–claimant.

**MEMORANDUM ORDER**

SUE L. ROBINSON, District Judge.

At Wilmington this 5th day of September, 2003, having reviewed the papers submitted and heard oral argument on the parties' cross motions regarding arbitration;

IT IS ORDERED that plaintiff's motion to enjoin arbitration (D.I.61) is denied and defendant's motion to stay pending arbitration (D.I.76) is granted, for the reasons that follow:

1. The analytical framework to be employed in resolving the pending motions has been summarized by the Supreme Court by way of four principles: (a) First, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,' " *AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); (b) Second, "the question of arbitrability—whether a[n] ... agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination," *AT & T,* 475 U.S. at 649, 106 S.Ct. 1415; (c) Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims,"

*Id.*; and (d) Finally, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* at 650, 106 S.Ct. 1415 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. 1347).

2. The issue before the court is whether a settlement and license agreement ("the Agreement") entered into in 1997 by Johnson & Johnson and Cordis Corporation (collectively referred to as "J & J") and Medtronic, Inc. ("Medtronic") is binding on plaintiff Medtronic AVE, Inc. ("Medtronic AVE"), a wholly-owned subsidiary of Medtronic acquired in 1999.

3. Medtronic AVE brought this patent infringement suit against Cordis in 2002 in the Eastern District of Texas. Cordis responded to suit by asserting a license defense and seeking to initiate an arbitration under the terms of the Agreement. Cordis also moved to stay the patent litigation pending arbitration and to transfer the case to Delaware, where related patent litigation was pending. (*See* D.I. 68) The District Court in Texas granted Cordis' motion to transfer (D.I.54); the motion to stay was not resolved on its merits. (D.I.68) Once in Delaware, Medtronic AVE moved to enjoin Cordis from arbitrating the license dispute. (D.I.61)

4. The relevant provisions of the Agreement include the following:

a. Section 1.01 defines the term "Affiliate" of a party to the Agreement to be "any entity that is controlled by such par-

ty, on the Effective Date or, subject to Sections 11.02(d) or 11.02(e) hereof, **becomes controlled by such party, after the Effective Date.**" [1] (D.I. 62, Ex. 2 at 1, emphasis added) There is no dispute that Medtronic AVE is an "Affiliate" of Medtronic, as defined in the Agreement.

b. Section 11.02(a) provides that, "[s]ubject to the limitations of this Section 11.02, this Agreement shall be binding upon and inure to the benefit of Medtronic, J & J and their respective **Affiliates.**" (D.I. 62, Ex. 2 at 22, emphasis added)

c. Section 11.02(d) provides that, "[i]f one of the parties hereto acquires a Major Competitor ..., then such party's license rights shall not be extended to cover any products of such Major Competitor." (D.I. 61, Ex. 2 at 23) There is no dispute that Arterial Vascular Engineering ("AVE") was defined as a "Major Competitor" in Section 1.05. (D.I. 61, Ex. 2 at 2)

d. Section 3.01(a) provides that "Medtronic grants (**and will cause its Affiliates to grant**) to J & J and its Affiliates a nonexclusive, irrevocable, worldwide license or sublicense, as the case may be, without the right to sublicense, **under all Licensed Patents of Medtronic (and its Affiliates)** ...." (D.I. 61, Ex. 2 at 4, emphasis added)

e. The term "Licensed Patents" is defined in Section 1.03 as "any and all patents claiming subject matter useful in the Field that are issued in any country from patent applications filed on or before the Effective Date ..., and that are either (i) owned by Medtronic or its **Affiliates** or J & J or its Affiliates **on the Effective Date,** or (ii) licensed to Medtronic or its **Affiliates** or J & J or its Affiliates **on the Effective Date** ...." (D.I. 61, Ex. 2 at 2, emphasis added)

---

1. According to Section 11.09, the "Effective Date" is November 4, 1997. (D.I. 61, Ex. 2 at 24)

f. Section 5.02(a) provides that disputes related to patent matters "shall be submitted to binding arbitration before a single arbitrator under the streamlined procedural rules and limited discovery provisions" outlined in Exhibit B to the Agreement. Section 5.02(b) contains the declaration of the parties that it was their intention, in entering the Agreement, "to provide certainty of mutual rights and responsibilities." (D.I. 61, Ex. 2 at 13)

■ 4. The court believes that such sophisticated parties with so much at stake in the field of interest [2] must be held to the letter of the Agreement they reached, even if the results seem inequitable. Clearly the Agreement contemplated that after-acquired Affiliates would be subject to the terms of the Agreement. Given that the whole point of the Agreement was to exchange licenses under patents owned by the parties and their affiliates, the court cannot say with positive assurance that the Agreement is not susceptible of an interpretation that binds an after-acquired Affiliate to honor the arbitration provision of the Agreement. Because doubts should be resolved in favor of arbitration, the court concludes that plaintiff is subject to the arbitration clause.[3] Therefore, defendant's motion for stay is granted and plaintiff's motion to enjoin is denied.

---

2. Section 1.02 defines the "Field" as "stents and catheters (including balloon catheters) for the delivery of stents...." (D.I. 61, Ex. 2 at 2)

3. The court is not convinced that the two subsequent amendments to the Agreement create a "course of dealing" that precludes arbitration. The first amendment is directed only to after-acquired patents in an expanded field, not to the patents of an after-acquired affiliate. (D.I.62, Ex. 8) Although the second amendment anticipates the acquisition of an affiliate, the definition of "After–Acquired Patents" is that of "any and all patents **claiming subject matter useful in the Expanded Field**," where the "Expanded Field" is defined as "stents, catheters (including balloon catheters) for the delivery of **stents, and balloon catheters used for balloon angioplasty**...." (D.I. 62, Ex. 9, emphasis added) Therefore, neither amendment is directed to the specific facts at issue.