AT&T TECHNOLOGIES, INC. *v.* COMMUNICATIONS
WORKERS OF AMERICA ET AL.

No. 84–1913.   Argued January 22, 1986—Decided April 7, 1986

WHITE, J., delivered the opinion for a unanimous Court. BRENNAN, J., filed a concurring opinion, in which BURGER, C. J., and MARSHALL, J., joined, *post*, p. 652.

*Rex E. Lee* argued the cause for petitioner. With him on the briefs were *David W. Carpenter, Gerald D. Skoning, Charles C. Jackson, Howard J. Trienens, Alfred A. Green,* and *Joseph Ramirez.*

*Laurence Gold* argued the cause for respondents. With him on the brief were *Irving M. Friedman, Stanley Eisenstein, Harold A. Katz, David Silberman,* and *James Coppess.*\*

JUSTICE WHITE delivered the opinion of the Court.

The issue presented in this case is whether a court asked to order arbitration of a grievance filed under a collective-bargaining agreement must first determine that the parties intended to arbitrate the dispute, or whether that determination is properly left to the arbitrator.

## I

AT&T Technologies, Inc. (AT&T or the Company), and the Communications Workers of America (the Union) are parties to a collective-bargaining agreement which covers telephone equipment installation workers. Article 8 of this agreement

---

*Briefs of *amici curiae* urging reversal were filed for the Chamber of Commerce of the United States by *John S. Irving, Carl L. Taylor,* and *Stephen A. Bokat;* and for the National Association of Manufacturers by *Jan S. Admundson* and *Gary D. Lipkin.*

*David E. Feller* filed a brief for the National Academy of Arbitrators as *amicus curiae* urging affirmance.

establishes that "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder" must be referred to a mutually agreeable arbitrator upon the written demand of either party. This Article expressly does not cover disputes "excluded from arbitration by other provisions of this contract."[1] Article 9 provides that, "subject to the limitations contained in the provisions of this contract, but otherwise not subject to the provisions of the arbitration clause," AT&T is free to exercise certain management functions, including the hiring and placement of employees and the termination of employment.[2] "When lack of work necessitates Layoff," Article 20 prescribes the order in which employees are to be laid off.[3]

On September 17, 1981, the Union filed a grievance challenging AT&T's decision to lay off 79 installers from its Chicago base location. The Union claimed that, because there was no lack of work at the Chicago location, the

---

[1] Article 8 provides, in pertinent part, as follows:

"If the National and the Company fail to settle by negotiation any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder, such differences shall (provided that such dispute is not excluded from arbitration by other provisions of this contract, and provided that the grievance procedures as to such dispute have been exhausted) be referred upon written demand of either party to an impartial arbitrator mutually agreeable to both parties." App. 21.

[2] Article 9 states:

"The Union recognizes the right of the Company (subject to the limitations contained in the provisions of this contract, but otherwise not subject to the provisions of the arbitration clause) to exercise the functions of managing the business which involve, among other things, the hiring and placement of Employees, the termination of employment, the assignment of work, the determination of methods and equipment to be used, and the control of the conduct of work." *Id.*, at 22.

[3] Article 20 provides, in pertinent part, that "[w]hen lack of work necessitates Layoff, Employees shall be Laid-Off in accordance with Term of Employment and by Layoff groups as set forth in the following [subparagraphs stating the order of layoff]." *Id.*, at 23. Article 1.11 defines the term "Layoff" to mean "a termination of employment arising out of a reduction in the force due to lack of work." *Id.*, at 20.

planned layoffs would violate Article 20 of the agreement. Eight days later, however, AT&T laid off all 79 workers, and soon thereafter, the Company transferred approximately the same number of installers from base locations in Indiana and Wisconsin to the Chicago base. AT&T refused to submit the grievance to arbitration on the ground that under Article 9 the Company's decision to lay off workers when it determines that a lack of work exists in a facility is not arbitrable.

The Union then sought to compel arbitration by filing suit in federal court pursuant to § 301(a) of the Labor Management Relations Act, 29 U. S. C. § 185(a).[4] *Communications Workers of America* v. *Western Electric Co.*, No. 82 C 772 (ND Ill., Nov. 18, 1983). Ruling on cross-motions for summary judgment, the District Court reviewed the provisions of Articles 8, 9, and 20, and set forth the parties' arguments as follows:

"Plaintiffs interpret Article 20 to require that there be an actual lack of work prior to employee layoffs and argue that there was no such lack of work in this case. Under plaintiffs' interpretation, Article 20 would allow the union to take to arbitration the threshold issue of whether the layoffs were justified by a lack of work. Defendant interprets Article 20 as merely providing a sequence for any layoffs which management, in its exclusive judgment, determines are necessary. Under defendant's interpretation, Article 20 would not allow for an arbitrator to decide whether the layoffs were warranted by a lack of work but only whether the company

---

[4] Section 301(a), 61 Stat. 156, 29 U. S. C. § 185(a) states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties."

followed the proper order in laying off the employees."
App. to Pet. for Cert. 10A.

Finding that "the union's interpretation of Article 20 was at least 'arguable,'" the court held that it was "for the arbitrator, not the court to decide whether the union's interpretation has merit," and accordingly, ordered the Company to arbitrate. *Id.*, at 11A.

The Court of Appeals for the Seventh Circuit affirmed. *Communications Workers of America* v. *Western Electric Co.*, 751 F. 2d 203 (1984). The Court of Appeals understood the District Court to have ordered arbitration of the threshold issue of arbitrability. *Id.*, at 205, n. 4. The court acknowledged the "general rule" that the issue of arbitrability is for the courts to decide unless the parties stipulate otherwise, but noted that this Court's decisions in *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U. S. 574 (1960), and *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564 (1960), caution courts to avoid becoming entangled in the merits of a labor dispute under the guise of deciding arbitrability. From this observation, the court announced an "exception" to the general rule, under which "a court should compel arbitration of the arbitrability issue where the collective bargaining agreement contains a standard arbitration clause, the parties have not clearly excluded the arbitrability issue from arbitration, and deciding the issue would entangle the court in interpretation of substantive provisions of the collective bargaining agreement and thereby involve consideration of the merits of the dispute." 751 F. 2d, at 206.

All of these factors were present in this case. Article 8 was a "standard arbitration clause," and there was "no clear, unambiguous exclusion from arbitration of terminations predicated by a lack of work determination." *Id.*, at 206–207. Moreover, although there were "colorable arguments" on both sides of the exclusion issue, if the court were to decide this question it would have to interpret not only Article 8, but Articles 9 and 20 as well, both of which are "sub-

stantive provisions of the Agreement." The court thus "decline[d] the invitation to decide arbitrability," and ordered AT&T "to arbitrate the arbitrability issue." *Id.*, at 207.

The court admitted that its exception was "difficult to reconcile with the Supreme Court's discussion of a court's duty to decide arbitrability in [*John Wiley & Sons, Inc.* v. *Livingston,* 376 U. S. 543 (1964)]." The court asserted, however, that the discussion was "dicta," and that this Court had reopened the issue in *Nolde Brothers, Inc.* v. *Bakery Workers,* 430 U. S. 243, 255, n. 8 (1977). 751 F. 2d, at 206.

We granted certiorari, 474 U. S. 814 (1985), and now vacate the Seventh Circuit's decision and remand for a determination of whether the Company is required to arbitrate the Union's grievance.

## II

The principles necessary to decide this case are not new. They were set out by this Court over 25 years ago in a series of cases known as the *Steelworkers Trilogy: Steelworkers* v. *American Mfg. Co., supra; Steelworkers* v. *Warrior & Gulf Navigation Co., supra;* and *Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U. S. 593 (1960). These precepts have served the industrial relations community well, and have led to continued reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising during the term of a collective-bargaining agreement. We see no reason either to question their continuing validity, or to eviscerate their meaning by creating an exception to their general applicability.

The first principle gleaned from the *Trilogy* is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf, supra,* at 582; *American Mfg. Co., supra,* at 570–571 (BRENNAN, J., concurring). This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to

arbitration. *Gateway Coal Co.* v. *Mine Workers*, 414 U. S. 368, 374 (1974).

The second rule, which follows inexorably from the first, is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *Warrior & Gulf, supra,* at 582–583. See *Operating Engineers* v. *Flair Builders, Inc.*, 406 U. S. 487, 491 (1972); *Atkinson* v. *Sinclair Refining Co.*, 370 U. S. 238, 241 (1962), overruled in part on other grounds, *Boys Markets, Inc.* v. *Retail Clerks*, 398 U. S. 235 (1970). Accord, *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 626 (1985).

The Court expressly reaffirmed this principle in *John Wiley & Sons, Inc.* v. *Livingston*, 376 U. S. 543 (1964). The "threshold question" there was whether the court or an arbitrator should decide if arbitration provisions in a collective-bargaining contract survived a corporate merger so as to bind the surviving corporation. *Id.*, at 546. The Court answered that there was "no doubt" that this question was for the courts. " 'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' . . . The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *Id.*, at 546–547 (citations omitted).

The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be

frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *American Mfg. Co.*, 363 U. S., at 568 (footnote omitted).

Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U. S., at 582–583. See also *Gateway Coal Co. v. Mine Workers, supra,* at 377–378. Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . ." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf, supra,* at 584–585.

This presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, "furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *Schneider Moving & Storage Co. v. Robbins,* 466 U. S. 364, 371–372 (1984) (cita-

tion omitted). See *Gateway Coal Co., supra,* at 378–379. The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be "drastically reduced," however, if a labor arbitrator had the "power to determine his own jurisdiction . . . ." Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1509 (1959). Were this the applicable rule, an arbitrator would not be constrained to resolve only those disputes that the parties have agreed in advance to settle by arbitration, but, instead, would be empowered "to impose obligations outside the contract limited only by his understanding and conscience." *Ibid.* This result undercuts the longstanding federal policy of promoting industrial harmony through the use of collective-bargaining agreements, and is antithetical to the function of a collective-bargaining agreement as setting out the rights and duties of the parties.

With these principles in mind, it is evident that the Seventh Circuit erred in ordering the parties to arbitrate the arbitrability question. It is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning layoffs predicated on a "lack of work" determination by the Company. If the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement. It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration.

The Union does not contest the application of these principles to the present case. Instead, it urges the Court to examine the specific provisions of the agreement for itself and to affirm the Court of Appeals on the ground that the parties had agreed to arbitrate the dispute over the layoffs at issue here. But it is usually not our function in the first instance to construe collective-bargaining contracts and arbitration clauses, or to consider any other evidence that might unmistakably demonstrate that a particular grievance was not to

be subject to arbitration. The issue in the case is whether, because of express exclusion or other forceful evidence, the dispute over the interpretation of Article 20 of the contract, the layoff provision, is not subject to the arbitration clause. That issue should have been decided by the District Court and reviewed by the Court of Appeals; it should not have been referred to the arbitrator.

The judgment of the Court of Appeals is vacated, and the case is remanded for proceedings in conformity with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom THE CHIEF JUSTICE and JUSTICE MARSHALL join, concurring.

I join the Court's opinion and write separately only to supplement what has been said in order to avoid any misunderstanding on remand and in future cases.

The Seventh Circuit's erroneous conclusion that the arbitrator should decide whether this dispute is arbitrable resulted from that court's confusion respecting the "arbitrability" determination that we have held must be judicially made. Despite recognizing that Article 8 of the collective-bargaining agreement "is a standard arbitration clause, providing for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder,'" and that "there is no clear, unambiguous exclusion [of this dispute] from arbitration," the Court of Appeals thought that "there [were] colorable arguments both for and against exclusion." *Communications Workers of America* v. *Western Electric Co.*, 751 F. 2d 203, 206–207 (1984). The "colorable arguments" referred to by the Court of Appeals were the parties' claims concerning the meaning of Articles 9 and 20 of the collective-bargaining agreement: the Court of Appeals thought that if the Union's interpretation of Article 20 was correct and management

could not order layoffs for reasons other than lack of work, the dispute was arbitrable; but if AT&T's interpretation of Article 20 was correct and management was free to order layoffs for other reasons, the dispute was not arbitrable under Article 9. *Id.*, at 207. Because these were the very issues that would be presented to the arbitrator if the dispute was held to be arbitrable, the court reasoned that "determining arbitrability would enmesh a court in the merits of th[e] dispute," *ibid.*, and concluded that the arbitrability issue should be submitted to the arbitrator.

The Court of Appeals was mistaken insofar as it thought that determining arbitrability required resolution of the parties' dispute with respect to the meaning of Articles 9 and 20 of the collective-bargaining agreement. This is clear from our opinion in *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U. S. 574 (1960). In *Warrior & Gulf*, the Union challenged management's contracting out of labor that had previously been performed by Company employees. The parties failed to resolve the dispute through grievance procedures, and the Union requested arbitration; the Company refused, and the Union sued to compel arbitration under § 301 of the Labor Management Relations Act, 29 U. S. C. § 185. The collective-bargaining agreement contained a standard arbitration clause similar to Article 8 of the AT&T/CWA contract, *i. e.*, providing for arbitration of all differences with respect to the meaning or application of the contract. We held that, in light of the congressional policy making arbitration the favored method of dispute resolution, such a provision requires arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf, supra*, at 582–583 (footnote omitted).

The Company in *Warrior & Gulf* relied for its argument that the dispute was not arbitrable on a "Management Functions" clause which, like Article 9 of the AT&T/CWA agree-

ment, excluded "matters which are strictly a function of management," 363 U. S., at 576, from the arbitration provision. We recognized that such a clause "might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge." *Id.*, at 584. However, we also recognized that to read the clause this way would make arbitrability in every case depend upon whether management could take the action challenged by the Union; the arbitrability of every dispute would turn upon a resolution of the merits, and "the arbitration clause would be swallowed up by the exception." *Ibid.* Therefore, we held that, where a collective-bargaining agreement contains a standard arbitration clause and the "exception" found in the Management Functions clause is general, "judicial inquiry . . . should be limited to the search for an explicit provision which brings the grievance under the cover of the [Management Functions] clause . . . ." *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 572 (1960) (BRENNAN, J., concurring); *Warrior & Gulf, supra,* at 584. "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ." 363 U. S., at 584–585.

The Seventh Circuit misunderstood these rules of contract construction and did precisely what we disapproved of in *Warrior & Gulf*—it read Article 9, a general Management Functions clause, to make arbitrability depend upon the merits of the parties' dispute. As *Warrior & Gulf* makes clear, the judicial inquiry required to determine arbitrability is much simpler. The parties' dispute concerns whether Article 20 of the collective-bargaining agreement limits management's authority to order layoffs for reasons other than lack of work. The question for the court is "strictly confined," *id.*, at 582, to whether the parties agreed to submit disputes over the meaning of Article 20 to arbitration. Because the collective-bargaining agreement contains a standard arbitra-

tion clause, the answer must be affirmative unless the contract contains explicit language stating that disputes respecting Article 20 are not subject to arbitration, or unless the party opposing arbitration—here AT&T—adduces "the most forceful evidence" to this effect from the bargaining history. Under *Warrior & Gulf*, determining arbitrability does not require the court even to consider which party is correct with respect to the meaning of Article 20.

The Court remands this case so that the court below may apply the proper standard to determine arbitrability. The Court states that "it is usually not our function in the first instance to construe collective-bargaining contracts and arbitration clauses, or to consider any other evidence that might unmistakably demonstrate that a particular grievance was not to be subject to arbitration." *Ante*, at 651–652. Of course, we have on numerous occasions construed collective-bargaining agreements "in the first instance"; we did so, for example, in the three cases comprising the *Steelworkers Trilogy*. See also *John Wiley & Sons, Inc.* v. *Livingston*, 376 U. S. 543, 552–555 (1964); *Packinghouse Workers* v. *Needham Packing Co.*, 376 U. S. 247, 249–253 (1964). Nonetheless, I agree with the Court that we should interpret a collective-bargaining agreement only where there is some special reason to do so. Thus, it is appropriate for this Court to construe a collective-bargaining agreement where—as in the *Steelworkers Trilogy*—our decision announces a new principle of law, since applying this principle may help to clarify our meaning. There is no such need, however, where—as here—we simply reaffirm established principles. Moreover, since the determination left for the Court of Appeals on remand is straightforward and will require little time or effort, concerns for efficient judicial administration do not require us to interpret the agreement. Finally, because the parties have submitted to us only fragmentary pieces of the bargaining history, we are not in a position properly to evaluate whether there is "the most forceful evidence" that the parties

did not intend for this dispute to be arbitrable. Therefore, I join the Court's opinion and concur in the Court's judgment remanding to the Court of Appeals.