**The COCA–COLA BOTTLING COMPANY OF NEW YORK, INC., Plaintiff–Appellant,**

v.

**SOFT DRINK AND BREWERY WORKERS UNION, LOCAL 812, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant–Appellee.**

**No. 457, Docket 94–7346.**

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1994.

Decided Nov. 3, 1994.

· Henry A. Platt, Washington, DC (Katherine Brewer, Schmeltzer, Aptaker & Shepard, Washington, DC, on the brief), for plaintiff-appellant.

Barry Levy, New York City (Lewis Rosenberg, Gerald Richman, Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, on the brief), for defendant-appellee.

Before: NEWMAN, Chief Judge, WALKER and LEVAL, Circuit Judges.

JON O. NEWMAN, Chief Judge:

Plaintiff-appellant The Coca–Cola Bottling Company of New York, Inc. ("the Company") appeals the February 25, 1994, order of the District Court for the Southern District of New York (Vincent L. Broderick, Judge) directing the Company to arbitrate a dispute with defendant-appellee Soft Drink and Brewery Workers Union, Local 812, International Brotherhood of Teamsters ("the Union"). 845 F.Supp. 153, 154 (S.D.N.Y.1994). The issue to be arbitrated is whether the Company breached what the Union contends is an express or implied contractual obligation to assure, under the circumstances of this case, that route-salesmen are provided with sufficient product to allow them to earn compensation, pursuant to commission and incentive provisions in the parties' collective bargaining agreement ("CBA").

· The Company brought this action under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for a declaration that its dispute with the Union was not arbitrable. The parties recognize that the CBA contains a broad arbitration clause, covering "[a]ll disputes" between the Union and the Company. CBA, Art. 19. The District Court accepted the Union's contention that the dispute as to availability of product, regardless of its merit, is covered by the arbitration clause. The Court therefore denied the Company's motion for summary judgment and ordered arbitration. On appeal, the Company argues that the District Court failed to determine the issue of arbitrability before sending the dispute to arbitration, that the amount of product that the Company delivered to route-salesmen is a non-mandatory subject of bargaining and for

that reason not arbitrable, and that the Company's level of production is a matter of business judgment not within the scope of the CBA. We consider each contention separately, after initial consideration of our appellate jurisdiction.

## I. Appellate Jurisdiction

■ The effect of the order denying summary judgment and directing arbitration was to deny the only relief sought in the Company's declaratory judgment action. The resulting order to arbitrate, rendered in a so-called "independent" action, is therefore appealable. See Filanto, S.P.A. v. Chilewich International Corp., 984 F.2d 58, 60 (2d Cir. 1993).

## II. The Merits

1. Although the District Court could have been more explicit in its holding, it did not "abdicate[ ]," Brief for Appellant at 14, its responsibility to determine the issue of arbitrability. Rather, it necessarily concluded that the dispute was arbitrable under Article 19 of the CBA. While rejecting the argument that the dispute involved a management matter inappropriate for arbitration, the Court retained the jurisdiction to consider appropriate relief if the arbitrator exceeded the scope of the arbitration clause by "interfer[ing] with management ... of Coca–Cola or endanger[ing] its secrets." 845 F.Supp. at 154.

■ 2. Whether the Court correctly determined that the dispute is arbitrable is a matter we review de novo. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987); Wheat, First Securities, Inc. v. Green, 993 F.2d 814, 817 (11th Cir.1993). The Company's initial argument against arbitrability contends that product level is not a mandatory subject of bargaining and for that reason is beyond the scope of arbitration. The argument rests on an overreading of our opinion in NLRB v. Sheet Metal Workers Local 38, 575 F.2d 394 (2d Cir.1978). That case involved a clause making arbitrable disputes between the parties concerning formation of a new contract. As to such a clause (referred to as an "interest arbitration provision[ ]," id. at 397), we said that it covered only disputes as to which bargaining was mandatory. We reasoned that an "interest arbitration provision" would be void as contrary to public policy to the extent that it applied to nonmandatory bargaining subjects because a contrary ruling would impair the parties' freedom to exclude nonmandatory subjects from bargaining. Id. at 398–99.

That decision, however, did not place a similar limit on the arbitrability of disputes arising under an existing contract. Indeed, Sheet Metal Workers explicitly recognized the parties' freedom "'to agree or not to agree'" with respect to subjects of nonmandatory bargaining. Id. at 398 (quoting NLRB v. Borg–Warner, 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958)). If the parties elect to include in their agreement a provision governing a matter not subject to mandatory bargaining and also adopt a broad arbitration clause, nothing in Sheet Metal Workers, labor law, or the Arbitration Act precludes arbitration of a dispute concerning the meaning or application of that provision.

3. The Company mounts a more substantial argument, however, in contending that nothing in the CBA gives the Union a right to insist that the Company assure any particular volume of product, or a volume of product sufficient to enable the employees to earn extra compensation. The Company acknowledges that Article 11(c) of the CBA provides, in addition to base pay, a schedule of commissions for route salesmen specifying different sums for each case of various categories of bottles, plus a bonus of 24½ cents for each case over 200 delivered daily by a route salesman working "solo." But it insists that this provision only specifies levels of payment for whatever quantities of product are delivered and provides no assurance that sufficient product will be made available for delivery to enable route salesmen to earn commissions or bonuses.

■ Under a broad arbitration clause, a dispute arising under the contract is arbitrable "[w]hether 'arguable' or not, indeed even if it appears to the court to be frivolous." AT & T Technologies, Inc. v. CWA, 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). See also Associated Brick Ma-

*son Contractors v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987) (claim arbitrable "that on its face is governed by the contract, even if the claim appears to be frivolous"). The Union appears to press this principle to its limit, and perhaps beyond, by contending that once the Company has agreed to a compensation provision that relates commissions and bonuses to volume of product, the Union may obtain arbitration of any dispute it might have with the Company that affects the level of product volume. At oral argument, the Union did not shrink from insisting that this principle would apply to a demand by the Union that the Company reduce its prices or increase its advertising expenditures, since such steps might well increase the volume of product (at least in the short run, until operating losses, if not curtailed, led to insolvency).

Fortunately, this case does not require us to test the outer limit of the Union's contention. *Cf. John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964) ("It is sufficient for present purposes that the demands are *not so plainly unreasonable* that the subject matter of the dispute must be regarded as non-arbitrable because it can be seen in advance that no award to the Union could receive judicial sanction.") (emphasis added). As refined at oral argument, the Union's more narrow claim is that in connection with a planned installation of new bottling equipment, the Company agreed with the Union to obtain product in the open market on an interim basis, thereby providing the route salesmen with an opportunity to earn commissions and bonuses. Whether such a side agreement was made, what it specified, whether it was breached, and whether, under the circumstances of this case, breach of such a side agreement gives rise to a remedy under the express or implied provisions of Article 11(c) of the CBA or otherwise affects the CBA are all matters for the arbitrators. The District Court correctly ordered arbitration.

The order of the District Court is affirmed.