**NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES & TECHNICIANS, The Broadcasting and Cable Television Workers Sector of the Communications Workers of America, AFL–CIO, CLC, Plaintiff–Appellant,**

v.

**AMERICAN BROADCASTING COMPANY, INC. (ABC); Herbert Fishgold, Defendants–Appellees.**

Docket Nos. 97–7010, 97–7409.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1997.

Decided April 15, 1998.

David A. Mintz, Weissman & Mintz, New York City (Ralph M. Phillips, Wohlner, Kaplon, Phillips, Young & Barsh, Encino, CA), for PlaintiffAppellant.

Kathleen M. McKenna, Proskauer Rose LLP, New York City (Gregory B. Reilly), for Defendant–Appellee.

Before: WINTER, Chief Judge, VAN GRAAFEILAND and MCLAUGHLIN, Circuit Judges.

WINTER, Chief Judge:

The National Association of Broadcast Employees & Technicians ("NABET") appeals from Judge Sprizzo's confirmation of three arbitration awards. In the course of reviewing the merits of these awards, the district court held that NABET's dispute with appellees (collectively, "ABC") was arbitrable under the pertinent collective agreement. NABET argues that the district court incorrectly concluded the arbitrator had power to hear the underlying dispute and that, even if the dispute is arbitrable, NABET is entitled to a second arbitration hearing because no court determined prior to the first arbitration that the dispute was arbitrable. We affirm.

## BACKGROUND

For decades, NABET and ABC have been parties to successive collective bargaining agreements governing ABC's employment of NABET members. However, these agreements, including the one pertinent to this appeal, cover the terms and conditions of employment of NABET members only in the continental United States. ABC's employment of NABET members in Hawaii has given rise to the present dispute.

In October 1996, ABC began hiring "freelancers," most of whom were NABET members, for its Christmas Day broadcast of the Aloha Bowl in Hawaii. The hiring of free-lancers caused NABET to demand recognition from ABC as the freelancers' collective bargaining representative. ABC refused. NABET then sent a letter to its members, stating that it intended to represent the freelancers and would engage in "lawful activities designed to achieve fair working conditions" for them.

ABC feared that NABET would disrupt ABC's broadcast of the Aloha Bowl. Accordingly, it filed a grievance with the Impartial Umpire provided for in the collective bargaining agreement, claiming that any disruptive activities would violate the agreement. Although all agree that the collective bargaining agreement does not govern ABC's employment of NABET members in Hawaii, ABC maintained that any disruptive activities by NABET were prohibited by Section 5.1 of the agreement even if they occurred in Hawaii. That Section provides in pertinent part:

> It is agreed that there will be no stoppage of work, lockout, or other interference with Company operations and that the employees hereunder will perform their regular and customary duties for the Company until one of the parties has failed to comply with any final decision of the Impartial Umpire or an arbitrator pursuant to Article XX.

ABC further argued that, because Section 20.10 of the agreement provides that one party may pursue arbitration when it believes the other is about to violate Section 5.1, ABC was entitled to arbitration of the dispute. Section 20.10 provides in pertinent part:

> Notwithstanding any of the foregoing provisions of this Article XX, if a party to the Agreement claims that there will be a violation of Article V, ... such party shall have the right to file a grievance directly with the Impartial Umpire setting forth such claim, demanding injunctive relief, and invoking the expedited arbitration procedure set forth below. However, this Section 20.10, which is applicable only to actions not yet effectuated, shall be used only if time does not permit the processing of the grievance under the other sections of Article XX.... Under the expedited

procedure, the arbitration hearings shall commence at the earliest possible availability of the Impartial Umpire, but in no event no more than twenty-four (24) hours after the grievance has been filed....

. . . . .

... The award of the Impartial Umpire shall be rendered at the earliest possible time and in any event no later than twenty four (24) hours after the hearing has been closed.... The Impartial Umpire shall be empowered under this procedure to order injunctive relief or such other remedy as he or she deems appropriate if the Umpire finds there has been or will be a violation of one of the provisions [of Article V].

NABET disputed both that the underlying dispute was arbitrable and that the activities in Hawaii violated Section 5.1 of the agreement.

On December 17, 1996, the Umpire concluded that he had authority under the agreement to determine the arbitrability of the dispute and that the dispute between ABC and NABET was arbitrable. The next day, the Umpire conducted a hearing on the merits of the grievance. Continuing to challenge the Umpire's determination of arbitrability, NABET did not participate in this hearing. On December 19, the Umpire determined that NABET had violated Section 5.1 of the collective bargaining agreement and ordered it not to interfere with ABC's broadcast of the Aloha Bowl. The Umpire also retained jurisdiction to consider ABC's request for additional injunctive relief regarding the broadcasts of the Pro Bowl scheduled for February 2, the Battle of the Gridiron to be taped on January 30 and broadcast on February 2, and the Hawaiian Open scheduled for February 15–16.

Although NABET did not participate in the Umpire's hearing on the merits of the dispute or ask a court to enjoin the arbitration, it brought the present action seeking, *inter alia*, to vacate the arbitrator's awards on both arbitrability and the merits. The district court independently determined that the dispute between NABET and ABC over the Aloha Bowl, as well as any future similar dispute between the parties, was arbitrable, and confirmed both awards.

A few days later, ABC requested another hearing before the Umpire to seek relief against NABET's planned disruptive activities at the Pro Bowl and other ABC events in Hawaii. NABET initially stated that it would participate but later accused the Umpire of bias and failed to appear. The Umpire held the hearing in NABET's absence and, on January 22, 1997, issued an award prohibiting NABET from interfering with ABC's February sporting events in Hawaii.

On January 28, ABC sought an order of contempt against NABET and a confirmation of the January 22 Award. The district court confirmed the Award but declined to hold NABET in contempt until a full factual record could be developed. NABET has appealed from the confirmation of the various arbitration awards.

## DISCUSSION

NABET advances two primary arguments on appeal, namely, that the dispute was not arbitrable and that, even if it were arbitrable, the awards are nevertheless void because the issue of arbitrability was not determined by a court prior to arbitration.

### A. *Arbitrability of the Dispute*

■ Review of a district court's determination that a dispute is arbitrable is *de novo, see ConnTech Dev. Co. v. University of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 683 (2d Cir.1996), and such questions generally are resolved in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). A grievance is arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). The district court ruled that NABET at least arguably violated Section 5.1 of its collective bargaining agreement with ABC and this

violation entitled ABC to arbitration under Section 20.10 of the agreement. We agree.

Section 5.1 of the collective bargaining agreement prohibits NABET's "interference with [ABC's] Company operations," and Section 20.10 authorizes the parties to arbitrate claims of imminent violations of Section 5.1. NABET contends that because disruption of the broadcast of the designated sporting events was not to take place in the continental United States, such acts could not fall within Section 5.1.

However, Section 5.1 is "susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419. The phrase "Company operations" as used in this Section arguably encompasses all ABC operations, including those outside the continental United States, even though the balance of the agreement governs terms and conditions of employment of NABET members in the continental United States. It strains neither the language of the agreement nor common sense to conclude that in Section 5.1, NABET promised peace to ABC wherever it operated and not just in the continental United States. We cannot say with "positive assurance" that Section 20.10 does not confer jurisdiction on the arbitrator to decide the current dispute, and we must, therefore, presume the dispute's arbitrability. *See id.*

### B. *NABET's Entitlement to a Second Arbitration*

■ NABET also argues that it is entitled to a second arbitration because a judicial determination of arbitrability must, as a matter of law, precede arbitration whenever arbitrability is disputed. According to NABET, this order of proceedings is legally compelled even when the party disputing arbitrability is positioned to, but does not, seek a court order enjoining the arbitration. In NABET's words, the arbitrator's "decision to proceed with the arbitration *prior to* a judicial determination that the [agreement] creates a duty to arbitrate makes any award null and void." Appellant's Brief at 24. For support, NABET cites language in a number of opinions, including *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547, 84 S.Ct.

909, 912–13, 11 L.Ed.2d 898 (1964), in which the Supreme Court stated that "compulsory submission to arbitration cannot *precede* judicial determination that the collective bargaining agreement does in fact create such a duty" (emphasis added). *See also AT & T Technologies,* 475 U.S. at 651, 106 S.Ct. at 1419–20 ("*If* the court determines that the agreement [requires arbitration], *then* it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement.") (emphasis added); *Stotter Div. of Graduate Plastics Co. v. District 65, UAW,* 991 F.2d 997, 1000 (2d Cir. 1993) (whether dispute is subject to arbitration is "threshold" determination).

■ While the quoted language lends marginal support to NABET's position, we do not believe that it mandates the rule asserted by NABET. We see no reason why arbitrability must be decided by a court before an arbitration award can be made. If the party opposing arbitration desires that order of proceedings, it can ask a court to enjoin arbitration on the ground that the underlying dispute is not arbitrable. If it does not seek to enjoin the arbitration, it can raise the arbitrability issue in a judicial confirmation proceeding. *See Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1510 (3d Cir. 1994) ("A party does not have to try to enjoin or stay an arbitration proceeding in order to preserve its objection to jurisdiction.... A jurisdictional objection, once stated, remains preserved for judicial review absent a clear and unequivocal waiver."), *aff'd,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). If arbitrability is rejected after the award, the party opposing arbitration will have obtained the relief sought. If arbitrability is upheld after the award, there is no reason for a court not to confirm the arbitrator's award. *See, e.g., First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 941, 946–47, 115 S.Ct. 1920, 1925–26, 131 L.Ed.2d 985 (1995) (confirming arbitrator's award after arbitrator decided he had authority to decide his jurisdiction and found his jurisdiction extended to dispute at hand). In such a case, the party opposing arbitration will have obtained a judicial ruling, although adverse, on arbitrabili-

ty. There is thus nothing to be gained by adopting NABET's proposed rule.

There is, moreover, much to be lost. Indeed, the proposed rule would frustrate a fundamental goal of arbitration: to provide a simple and expeditious alternative to litigation. *See Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354-55. Under NABET's view, arbitration proceedings must come to a halt, and the party seeking arbitration must bear the burden of obtaining a favorable ruling whenever a party disputes arbitrability. If any and all objections to arbitrability were enough to halt the process pending a court order compelling arbitration, a non-grieving party would have an incentive to raise meritless arbitrability issues, particularly where, as here, time is of the essence. Indeed, the rule proposed by NABET is hardly in the interests of unions and their members generally, because they, rather than employers, file the vast majority of grievances under collective agreements. Finally, under NABET's proposed rule, parties would have an incentive to object to arbitrability in order to receive two bites at the apple. A party could object to the arbitrator's jurisdiction, yet wait for the arbitration award to be issued safe in the knowledge that if the award is unfavorable, it can demand a second arbitration.

NABET does not contest the merits of the arbitrator's award. Because the dispute between NABET and ABC was arbitrable and NABET is not entitled to a second chance at arbitration, the awards must be confirmed.

We therefore affirm.