**Frank M. SMITH, Plaintiff,**

v.

**CURRENCY TRADING INTERNATION-AL, INC., Marie Fine and John Doe, Defendants.**

No. CIV. A. 98–B–577.

United States District Court,
D. Colorado.

July 17, 1998.

Francis V. Cristiano, Richard A. Nervig, Cristiano & Nervig, Denver, CO, for Plaintiff.

David A. Zisser, Berliner, Zisser, Walter & Gallegos, P.C., Denver, CO, for Defendants.

**MEMORANDUM OPINION AND ORDER**

BABCOCK, District Judge.

This action was removed from the District Court of the City and County of Denver, Colorado based on diversity pursuant to 28 U.S.C. § 1441. Plaintiff Frank M. Smith (Smith) moves to confirm a National Association of Securities Dealers, Inc. (NASD) award in the amount of $35,181.53 for compensatory damages, $39,774.46 exemplary damages, and statutory interest and costs, and for entry of judgment thereon jointly and severally against defendants Currency Trading International, Inc. (CTI), Marie Fine (Fine) (collectively, defendants), and John Doe. Defendants cross-move to vacate the arbitration award. After consideration of the motions, response, and counsels' argument, I will deny Smith's motion to confirm and grant defendants' cross-motion to vacate.

**I.**

An NASD arbitration was commenced on or about October 15, 1996, when Smith filed a Statement of Claim with the NASD alleging that CTI, a securities brokerage, by and through its registered representative Fine (collectively, defendants) and another unidentified CTI registered representative (John Doe), unlawfully induced Smith to make investments in highly speculative foreign currency options by material misrepresentations and/or omissions and which were unsuitable for Smith given his stated investment objectives and lack of sophistication. The events giving rise to the Smith arbitration occurred between approximately June and December 1995, when CTI was a member of the NASD. On September 9, 1996, CTI resigned its NASD membership.

CTI and Fine did not answer Smith's arbitration statement of claim and did not file a written submission agreement with the NASD. Notwithstanding defendants' failure to respond, arbitrators were appointed and a hearing was held on December 16, 1997, in Denver, Colorado. Defendants' counsel was present at the arbitration hearing for the "[sole] purpose of reiterating [defendants'] position that there was no written agreement

under which it could be required to arbitrate." Def. Opp. p. 3.

On January 15, 1998, the three-member arbitration panel entered an award in Smith's favor in NASD arbitration case number 96–04769. The panel determined joint and several liability on the part of all three defendants in the amount of $35,181.53 for compensatory damages, exemplary damages in the amount of $39,774.46, post award statutory interest at the rate of 8% per annum, and $750.00 in costs.

## II.

Defendants submit the jurisdictional argument that because they assert there is no agreement to arbitrate, a judicial determination whether an arbitration agreement exists must be made before the matter is submitted to arbitration. I agree.

Smith signed a CTI "Individual Customer Options Agreement" (Agreement) which states, in pertinent part:

> 8. APPLICABLE RULES. All transactions under this Agreement ... will be conducted in accordance with and will be subject to the following, whether in effect on the date hereof or becoming effective after the date hereof: ... v) the constitution, bylaws, rules, regulations, usages, rulings and interpretations of the National Association of Securities Dealers [NASD] insofar as they may be applicable....

Pltf. Ex. C. It being undisputed that the Agreement does not contain an explicit agreement to arbitrate, Smith contends he is a third-party beneficiary of NASD arbitration provisions. Here, the existence of an agreement to arbitrate is genuinely disputed.

In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court spelled out the analysis courts must apply in determining whether arbitrators or courts are to decide whether a matter is subject to arbitration. It explained "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id.* at 943, 115 S.Ct. 1920. However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so ...." *Id.* at 944, 115 S.Ct. 1920 *citing AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "In this manner the law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular meritsrelated dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption." *First Options,* 514 U.S. at 944–45, 115 S.Ct. 1920. The arbitrability inquiry is more stringent because given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, "one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945, 115 S.Ct. 1920. Hence, the Court underscored its holding in *AT & T* that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T,* 475 U.S. at 649, 106 S.Ct. 1415. *See also United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Where, as here, there is no explicit arbitration agreement, there, of course, cannot be an agreement to submit the issue of arbitrability to the arbitrators. Smith's third-party status claim does not render explicit and unambiguous, the purported agreement to arbitrate. The rationale expressed in *First Options* and its predecessors controls here. Consequently, I conclude that a judicial determination whether an arbitration agreement exists should have been made before the matter was submitted to arbitration. Therefore, the arbitration panel exceeded its authority by entering an award before judi-

cial determination whether an arbitration agreement exists.

Accordingly, IT IS ORDERED that:

1. plaintiff's motion to confirm is DENIED;

2. the cross-motion to vacate filed by defendants Currency Trading International, Inc. and Marie Fine is GRANTED;

3. the January 15, 1998 award entered in NASD arbitration case number 96–04769 is VACATED; and

4. Final judgment shall enter in accordance herewith.