**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 7 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

OIL, CHEMICAL, & ATOMIC
WORKERS INTERNATIONAL UNION
(AFL-CIO) and its LOCAL 5-857, Labor
Organizations,

      Plaintiffs-Appellees,

v.

CONOCO, INC., a Delaware corporation,

      Defendant-Appellant.

No. 99-5173

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 97-CV-682-H)

---

David A. Scott, Jackson, Lewis, Schnitzler, & Krupman, Dallas, Texas (J. Patrick Cremin
and William D. Fisher, Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C., Tulsa,
Oklahoma, on the briefs), for Defendant-Appellant.

Stephen R. Hickman, Frasier, Frasier, and Hickman, Tulsa, Oklahoma, for Plaintiffs-
Appellees.

---

Before **HENRY** and **BRISCOE**, Circuit Judges, and **SHADUR**, District Judge,[*]

---

[*] The Honorable Milton I. Shadur, Senior District Judge for the Northern District
of Illinois, sitting by designation.

**HENRY**, Circuit Judge.

Conoco appeals the district court's decision to submit a series of grievances filed by the plaintiffs, the Oil, Chemical & Atomic Workers International Union (AFL-CIO) and its Local 5-857 (the union) to arbitration. After staying the instant action pending the completion of arbitration, the district court issued an order explaining that it had not yet made a dispositive ruling on the issue of whether the grievances were arbitrable. We hold, consistent with developing case law, that the district court should have decided whether the grievances at issue were arbitrable before submitting them to arbitration. Accordingly, we vacate the district court's orders and remand the case to the district court.

## I. BACKGROUND

In 1995 and 1996, the union filed a series of grievances against Conoco challenging the company's handling of job reductions at its Ponca City, Oklahoma refinery. The union alleged that Conoco had hired a number of nonunion personnel to fill vacant positions and had thereby violated the provisions of three separate collective bargaining agreements governing three different groups: (1) refinery workers, (2) technology workers, and (3) clerical workers.

Each agreement contains a management rights clause that sets forth certain

functions that are "solely the responsibility of Management," Aplt's App. vol. I, at 51, 95, 134, including "[h]iring, maintaining order, and discipline or discharge for just cause" and "the assignment of work subject only to other provisions of [the] Agreement." See id. Each management rights clause proceeds to list additional, management-only functions in some detail. Importantly, all of the clauses state that "[g]rievances originating under [the management rights clause] are subject to the grievance procedure but cannot be submitted to arbitration; and no arbitrator has the authority to rule on [the management rights clause] with the exception of determination of just cause." Id. at 52, 95, 134.

The union's grievances proceeded through the initial stages outlined in the collective bargaining agreements. When they could not be resolved, the union requested arbitration. Conoco objected, arguing that the grievances were governed by the management rights clauses and were therefore not arbitrable.

In July 1997, the union filed this action. It alleged that Conoco had refused to submit to arbitration, and it requested specific performance of the arbitration clauses in the collective bargaining agreements. Conoco filed a motion for summary judgment, arguing that the management rights clauses rendered the grievances non-arbitrable. The district court denied Conoco's motion, reasoning that there were controverted issues of material fact as to the arbitrability of the grievances and stating that there would be a non-jury trial on the question. The court also ordered the parties to evaluate each individual

grievance to determine whether each was subject to arbitration.

After hearing further arguments from the parties, the court entered an order finding that "doubts regarding the arbitrability of Plaintiffs' grievances require that this case be submitted to arbitration." Id. vol. II, at 314 (District Court Order, filed May 20, 1999). Conoco moved for reconsideration, and, on July 22, 1999, the district court entered an order reaffirming its original decision.

The court explained that it was not deciding the question of the whether the management rights clauses barred arbitration. According to the court, the parties could reargue that issue at the conclusion of arbitration:

> [Plaintiff union] respond[s] that "to the extent the Arbitrator has jurisdiction to decide a matter and does decide a matter, then his decision is binding unless it falls within the narrow exceptions that give[] the Court the power to review."
>
> The Court agrees with Plaintiffs' analysis. The Court's order does not permit the arbitrator to decide whether a grievance falls within the management rights clause of the agreement, because any decision by the arbitrator affecting the question of arbitrability is not subject to the high level of deference suggested by Conoco. The existence of a free-standing management rights clause in this case alters the otherwise applicable standard for reviewing an arbitrator's decision as to whether the grievances alleged in this case are arbitrable. Accordingly, the Court's decision to compel arbitration neither constitutes a dispositive ruling on this issue of arbitrability nor works a manifest injustice on Conoco.

Id. at 348. (District Court Order, filed July 22, 1999) (internal citation omitted).

Conoco then filed a motion with the district court requesting leave to file an interlocutory appeal. The district court denied the motion, and Conoco then filed this appeal.

4

## II.  DISCUSSION

### A.  Appellate Jurisdiction

In light of the district court's denial of Conoco's request to certify its order as appealable, as well as its statement that it had not made a dispositive ruling on the issue of arbitrability, we must first consider whether we have appellate jurisdiction.  As a general rule, this court has jurisdiction over only final orders, those that "'end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment.'"  Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)); 28 U.S.C. § 1291.

However, in cases involving a district court order directing arbitration under a collective bargaining agreement subject to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the Supreme Court has established a particular rule of appellate jurisdiction. See Goodall-Sanford v. United Textile Workers of Am., 353 U.S. 550, 551 (1957).    If the arbitration ordered by the district court "is not merely a step in judicial enforcement of  a claim nor auxiliary to a main proceeding, but the full relief sought," then the district court ruling constitutes  "a 'final decision' within the meaning of 28 U.S.C. § 1291."  Id. ; see also Coca-Cola Bottling Co. of N. Y., Inc. v. Soft Drink & Brewery Workers Union, Local 812, Int'l Bhd. of Teamsters, 39 F.3d 408, 410 (2d Cir.

1994) (concluding that the district court's order denying the plaintiff employer's motion for summary judgment and directing arbitration was appealable because it "den[ied] the only relief sought in the [c]ompany's declaratory judgment action"); Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 385 (3rd Cir. 1994) (finding appellate jurisdiction to review the district court's determination that the parties were required to arbitrate a grievance); International Union, United Auto. Aerospace & Agric. Implement Workers of Am. v. United Screw & Bolt Corp., 941 F.2d 466, 472 (6th Cir. 1991) ("Because the district court has ordered enforcement of the arbitration provision in [the collective bargaining agreement], a final decision has been made and it is appealable under 28 U.S.C. § 1291."). On the other hand, appellate jurisdiction is lacking if the order directing arbitration is made "in the course of a continuing suit for other relief." Zosky v. Boyer, 856 F.2d 554, 557 (3d Cir. 1988) (quoting Rogers v. Schering Corp., 262 F.2d 180, 182 (3d Cir. 1959)).[1]

_____

[1] There is some question as to whether the Federal Arbitration Act, 9 U.S.C. §§ 1-16, applies to this case. Section 16 of that act authorizes appeals from certain district court orders involving arbitration proceedings, including "a final decision with respect to an arbitration that is subject to this title." See 9 U.S.C.§ 16(a)(3). With regard to appeals of decisions ordering arbitration under the Labor Management Relations Act, 29 U.S.C. § 185, courts have adopted a rule of appellate jurisdiction that resembles the rule formulated in Goodall-Sanford. See Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994) ("A majority of the circuits have adopted the view that an order can only be final within the meaning of § 16(a)(3) and therefore immediately appealable if arbitrability is the sole issue before the district court."). However, the Act excludes from coverage "contracts of employment of. . . any workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

This circuit has held that the exception for "workers engaged in foreign or

Like the plaintiff in Goodall-Sanford, the union here seeks an order compelling specific performance of grievance arbitration clauses. By entering its May 20, 1999 order compelling the parties to submit to arbitration, the court granted the union "the full relief sought." See Goodall-Sanford, 353 U.S. at 551. As we later explain in this opinion, the court should have first decided whether the grievances were arbitrable before ordering arbitration. But, as concluded in Goodall-Sanford, 353 U.S. at 552, the district court's skipping that step and ordering arbitration at the outset does not deprive this court of jurisdiction.

We therefore conclude that the district court's order requiring the parties to submit to arbitration constitutes a final order that we have jurisdiction to review. See generally University Life Ins. Co. v. Unimarc, Ltd., 699 F.2d 846, 849 (7th Cir. 1983) (noting that

---

interstate commerce" does not encompass all employment contracts but instead only those of workers "engaged in the channels of interstate commerce." See McWilliams v. Logicon, 143 F.3d 573, 575-76 (10th Cir. 1998). However, this circuit had previously concluded that collective bargaining agreements are "contracts of employment" within the exclusion and are thus not covered by the Federal Arbitration Act. See United Food & Comm'l Workers, Local Union No. 7R, v. Safeway Stores, Inc., 889 F.2d 940, 943-44 (10th Cir. 1989).

The Supreme Court has granted certiorari on this question. See Circuit City Stores, Inc. v. Adams, no. 99-1379, 2000 WL 1132951 (Aug. 7, 2000) (brief in support of petition for a writ of certiorari on the question of "[w]hether the Ninth Circuit erred in holding . . . that the Federal Arbitration Act does not apply to contracts of employment"); 194 F.3d 1070 (9th Cir. 1999), cert. granted, 120 S. Ct. 2004 (May 22, 2000). In light of this uncertainty, we decide the jurisdictional issue on the basis of the federal law governing collective bargaining agreements rather than on the basis of the provisions of the Federal Arbitration Act.

7

"[i]f the appeal is postponed too long, the appellant may be deprived of a meaningful appellate review and the parties and the trial court harrowed by lengthy proceedings that could have been averted if the error on which they were founded had been corrected by the appellate court earlier"). We therefore proceed to the merits of Conoco's appeal.

### B. The District Court's Refusal to Issue a Dispositive Ruling on Arbitrability

On the merits, Conoco argues that the district court's postponement of a ruling on the arbitrability of the grievances violates established principles regarding the construction of collective bargaining agreements, depriving it of its right to a judicial determination of that issue. The union responds that Conoco has not been deprived of such a determination but instead must simply wait until the conclusion of the arbitration proceedings to receive it.

There is a "longstanding federal policy of promoting industrial harmony through the use of collective bargaining agreements." AT&T Tech., Inc v. Communication Workers of Am., 475 U.S. 643, 651 (1986). Federal policy also favors voluntary arbitration as a means of settling disputes about the terms of such agreements. See Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S.243, 254 (1977). However, in spite of that federal policy, the question of whether the parties to a collective bargaining agreement are obligated to submit a dispute to arbitration is essentially a matter of construing the agreement. AT&T, 475 U.S. at 648-

49. Thus, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Id. at 648 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

Importantly, the Court has also held that "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." Id. at 649. Unless the collective bargaining agreement "clearly and unmistakably" provides otherwise, the question of whether a dispute is arbitrable is for the court rather than the arbitrator to decide. Id.; see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so.") (internal quotation marks omitted); Salinas Cooling Co. v. Fresh Fruit & Vegetable Workers, Local P-78-A, 743 F.2d 705, 707 (9th Cir. 1984) (stating that the "strong policy favoring arbitration of labor disputes . . . does not relieve the district court of its duty to make the arbitrability determination").

In light of the courts' authority to decide whether a dispute is arbitrable, the Supreme Court has indicated that an arbitration should not proceed until a court has resolved the threshold question of whether the dispute is arbitrable:

> The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind

9

it at all.

John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964) (emphasis added).

Several circuits have applied that statement to conclude that district courts have erred in failing to resolve the arbitrability question before allowing the arbitration to proceed. For example, in Independent Lift Truck Builders Union v. Hyster Co., 2 F.3d 233 (7th Cir. 1993), the district court issued a ruling that appeared in one instance to conclude that the plaintiff union's grievance was arbitrable and in other instances to conclude that the question of arbitrability should be decided by the arbitrator. The Seventh Circuit concluded that, even though a court ruling on the issue of arbitrabilty might require the district court to rule on the merits of the grievance, the court was still required to decide that issue first. Thus, "the district court erred in ordering the dispute to arbitration without first determining that it was arbitrable. . . . Only after the district court has determined that the parties intended the agreement to apply to [the employees who filed the grievances] may the court order the dispute to arbitration." Id. at 236-37 (emphasis added).

Similarly, in General Drivers, Warehousemen & Helpers, Local Union 89 v. Moog Louisville Warehouse, 852 F.2d 871 (6th Cir. 1988), the district court concluded that the question of whether the plaintiff union had made a timely request for arbitration was a question to be decided by the arbitrator. It therefore granted the union's request for an order compelling arbitration. Reversing that decision, the Sixth Circuit concluded that

10

"[t]he fact that there is a general agreement, under certain circumstances, to afford arbitration as a last resort is not controlling. The court must <u>first</u> determine from the contract provisions dealing with arbitration, the particular grievances that are intended to be subject to arbitration." <u>Id.</u> at 875 (emphasis added). Other courts have characterized the district courts' duty to decide arbitrability in similar terms. <u>See, e.g.</u>, <u>Bell-Atlantic-Pennsylvania, Inc. v. Communications Workers of Am., AFL-CIO, Local 13000</u>, 164 F.3d 197, 201 (3rd Cir. 1999) (stating that "parties may be sent to arbitration only <u>after</u> the court so directing them is satisfied that this was their intent and that both parties consented to do so in their contractual agreement" and describing this decision as a "threshold determination") (emphasis added); <u>Kansas City S. Transport Co. v. Teamsters Local Union No. 41</u>, 126 F.3d 1059, 1067 (8th Cir. 1997) (concluding that the district court appropriately held an order compelling arbitration in abeyance pending an evidentiary hearing on arbitrability); <u>Smith v. Currency Trading Int'l, Inc.</u>, 10 F. Supp. 2d 1189, 1190 (D. Colo. 1998) (concluding that " a judicial determination of whether an arbitration agreement exists should have been made <u>before</u> the matter was submitted to arbitration") (emphasis added), <u>aff'd</u>, no. 98-1311,1999 WL 565460 (10th Cir. Aug. 3, 1999).[2]

---

[2] We have found only one decision suggesting that, in the absence of an agreement to submit arbitrability to the arbitrator, arbitration proceedings may proceed before a court determination of arbitrability. In <u>National Ass'n of Broadcast Employees & Technicians v. American Broadcasting Co.</u>, 140 F.3d 459, 462 (2d Cir. 1998), the plaintiff union brought an action seeking to vacate an arbitrator's award because the issue of arbitrability

We have found no case involving a decision precisely like the one at issue here: a postponement of a dispositive ruling on arbitrability until the conclusion of arbitration proceedings. However, because there is no "clear and unmistakable evidence" that the plaintiff union and Conoco agreed that the arbitrator should decide the arbitrability of the grievances, see First Options, 514 U.S. at 944, such a postponement is inconsistent with the Supreme Court's decisions in AT&T and John Wiley & Sons, as well as the lower court decisions applying them. The district court's postponement allows what those decisions forbid: "a compulsory submission to arbitration [prior to a] judicial determination that the collective bargaining agreement does in fact create such a duty." John Wiley & Sons, 376 U.S. at 547. The possibility that the district court might revisit the arbitrability question at the conclusion of the arbitration proceedings is not an adequate substitute for a pre-arbitration ruling. Conoco is entitled to a ruling on

had not been addressed by a court before the arbitration proceeded. The Second Circuit rejected the union's argument that the arbitration award was invalid, stating that it saw "no reason why arbitrability must be decided by a court before an arbitration award can be made." NABET, 140 F.3d at 462. The Second Circuit observed that "[i]f the party opposing arbitration desires that order of proceedings, it can ask a court to enjoin arbitration on the ground that the underlying dispute is not arbitrable." Id. Moreover, if the objecting party did not seek to enjoin the arbitration, it could raise the arbitrability question in the judicial proceeding seeking a confirmation of the arbitration award. See id.

In our view, NABET is distinguishable from this case. There, neither party requested a determination of arbitrability before the arbitration commenced. The Second Circuit was careful to observe that the party objecting to the proceeding could have done so by seeking an injunction. Here, Conoco requested the district court to determine arbitrability before ordering arbitration, and the court refused to do so. Thus, NABET does not support the district court's decision to postpone a dispositive ruling.

12

arbitrability before it is compelled to submit to arbitration. AT&T, 475 U.S. at 648-49; John Wiley & Sons, 376 U.S. at 547.

## III. CONCLUSION

We VACATE the district court's decision postponing a dispositive ruling on the arbitrability of the plaintiff union's grievances, and we REMAND the case to the district court for proceedings consistent with this opinion. On remand, the district court should determine whether, and to what extent, the subject grievances are arbitrable. Only after a determination of arbitrability may it order the parties to submit to arbitration.