LAIF X SPRL, Petitioner.

v.

AXTEL, S.A. DE C.V., Telinor Telefonia, S. De R.L. De C.V., Blackstone Capital Partners III Merchant Banking Fund, L.P., Blackstone Offshore Capital Partners III, L.P., And Blackstone Family Investment Partnership III, L.P., Respondents.

No. 04 CIV. 1290(JSR).

United States District Court, S.D. New York.

March 16, 2004.

Robert T. Greig, Cleary, Gottlieb, Steen & Hamilton, New York City, for Petitioner.

Dana H. Freyer, Marco E. Schnabi, Skadden, Arps, Slate, Meagher & Flom, L.L.P., Michael Sangyun Kim, Kobre & Kim, L.L.P., Robert I. Bodian, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York City, for Respondents.

## MEMORANDUM ORDER

RAKOFF, District Judge.

The instant proceedings derive from a litigious battle over control of a Mexican communications company. Petitioner Laif X Sprl ("Laif X") is a Belgian investment company. Respondents are, respectively, Axtel S.A. de C.V. ("Axtel"), a highly-regulated Mexican telecommunications company created in 1997; Telinor S. de R.L. de C.V. ("Telinor"), a Mexican limited liability partnership that owns about 58% of Axtel's voting stock capital; and Blackstone Capital Partners III Merchant Banking Fund, L.P., Blackstone Family Investment Partnership III, L.P., and Blackstone Offshore Capital Partners, L.P. (collectively "Blackstone"), three limited partnerships organized under Delaware law.

Pursuant to a subscription agreement dated April 1, 2003, Laif X purchased $10,054,054 worth of Axtel shares, including a majority of the Series "C" class of shares. Laif X purported to have the right to subscribe to these shares because it had received an assignment of such sub-

scription rights from an affiliated entity known as Laif IV Ltd. ("Laif IV"). Laif IV, however, had never itself been an Axtel shareholder but had received the subscription rights in question through an assignment from another affiliated entity, WorldTel Mexico Telecom Ltd. ("WorldTel"), which was an Axtel shareholder holding the subscription rights in question.

After Laif X paid for its shares, Axtel and Telinor transferred Series "A" shares held by Telinor to Blackstone, which converted these into Series "C" shares, as a result of which Laif X no longer held a majority of the Series "C" shares and thereby lost its ability to elect a majority of the Series C directors of Axtel. In other words, as Laif X sees it, Axtel and its confederates, having obtained over $10 million of Laif X's money (which, according to Laif X, Axtel desperately needed), thereafter sought to dilute what Laif X received in return by reducing the extent of Laif X's control of Axtel.

Axtel's bylaws require arbitration of "any dispute, claim, controversy or difference (a 'Dispute') among the shareholders or between the shareholders and the Corporation, arising under or in connection with any of their respective rights and obligations under these bylaws or with their interpretation." Axtel Bylaws, Art. 60. However, in response to the foregoing developments, Laif X's first step was not to seek arbitration, but rather, on October 27, 2003, to file suit against Axtel in the First Judicial District in Monterrey, Nuevo Leon, Mexico. This lawsuit (which Laif X neglected to mention in its initial papers here) was, Laif X now claims, a technical prerequisite to preserving the status quo in Mexico before initiating arbitration. The lawsuit, however, was dismissed, an action that is now on appeal to a higher Mexican court. *See* transcript, 3/1/04.

Meanwhile, on December 23, 2003, Laif X initiated an arbitration proceeding in New York against Axtel, Telinor, and Blackstone, seeking to nullify the issuance of Series "C" shares to Blackstone. Laif X designated its arbitrators on January 20, 2004, respondents did likewise on February 6, 2004, and the American Arbitration Association is currently in the process of implementing procedures for selecting the third arbitrator. Each of the respondents has filed Answers to the Demand for Arbitration, and the arbitration appears to be proceeding on course.

Nevertheless, on January 26, 2004, Telinor filed a lawsuit (the "Mexican Lawsuit") against Laif IV, Laif X, and Axtel in the First Judicial District in Monterrey, Nuevo Leon, Mexico. In that lawsuit, Telinor challenges the legitimacy of the assignment of subscription rights from Laif IV to Laif V pursuant to which Laif X purchased its shares of Axtel. In effect, therefore, Telinor seeks by that lawsuit to invalidate the Laif X purchase of Axtel shares.

Laif X thereupon responded to the Mexican Lawsuit by filing the instant petition, in which Laif X seeks an order:

(a) compelling Respondents to arbitrate any and all disputes with Laif X arising under or in connection with any of their respective rights and obligations under Axtel's bylaws or with their interpretation; and (b) enjoining Respondents from commencing or pursuing any lawsuit (including without limitation the Mexican Lawsuit) arising under or in connection with any of their respective rights and obligations under Axtel's bylaws or with their interpretation, against Laif X (including any of its affiliates, employees, officers, and agents) in any jurisdiction without a prior determination by the arbitral tribunal in the Pending Arbitration that such action would be outside the scope of its jurisdiction.

Petition to Compel Arbitration at 5. On March 1, 2004, the Court heard oral argu-

ment on the petition and, essentially on consent, denied the petition as to respondents Axtel and Blackstone, since neither of these respondents had refused to arbitrate nor commenced any related litigation. *See* transcript, 3/1/04; Order, 3/1/2004 (confirming bench rulings). By further Order dated 3/8/04, the Court denied the petition as to the remaining respondent, Telinor. The reasons for this latter ruling are as follows:

■ *First,* Laif X is not entitled to an order compelling Telinor to arbitrate, since Telinor is already participating in the ongoing arbitration.

■ *Second,* Laif X is not entitled to an order enjoining Telinor from proceeding further with the Mexican Lawsuit since such an order would constitute an unwarranted interference with Mexican sovereignty. Although camouflaged as a suit against Laif IV, the gist of Telinor's position in that lawsuit is that Laif X never lawfully held shares in Axtel and therefore cannot exercise any of the rights of shareholders (including the right to arbitrate). Whether or not such issues are themselves within the scope of the ongoing arbitration, and whether or not it is the arbitrators who should determine whether such issues are within the scope of the arbitration, are themselves largely issues of Mexican law, *see* Axtel Bylaws, Art. 62; *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 90, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987), that, at least colorably, may belong in a Mexican court.

■ While there is a strong United States policy of enforcing arbitration clauses, *see e.g., AT & T Techs. Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), there is an equally strong United States policy against interfering with proceedings before a foreign sovereign, *see e.g. China Trade & Dev. Corp. v. M.V. Choong Yong,*

837 F.2d 33, 35 (2d Cir.1987) ("an anti-foreign suit injunction should be used 'sparingly'... and should be granted 'only with care and great restraint' "). In resolving this tension, and assuming certain threshold requirements are satisfied, *see id.* at 36; *Newbridge Acquisition I, LLC v. Grupo Corvi, S.A. de D.V., et. al,* No. 02 Civ. 9839, 2003 WL 42007 (S.D.N.Y. Jan. 6, 2003), a court looks to such factors, *inter alia,* as whether the foreign action interferes with the U.S. court's own jurisdiction, whether the foreign action is designedly vexatious or calculated to cause material and burdensome delay, and other such equitable considerations. *See generally American Home Assurance Co. v. Ins. Corp. of Ireland, Ltd.,* 603 F.Supp. 636, 643 (S.D.N.Y.1984). As noted, however, the Second Circuit takes a restrictive view of such injunctions, cautioning courts to use them only in relatively extreme circumstances. *See China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d at 36.

Here, Telinor's lawsuit raises colorable issues under Mexican law that arguably are the province of a Mexican court rather than the arbitrators. At the same time, Telinor's lawsuit in Mexico is not materially delaying, or even directly interfering, with the ongoing arbitration, for both are proceeding simultaneously. Indeed, as indicated earlier, Telinor has not in any manner refused to participate in the arbitration commenced by Laif X. This is not a proper case, therefore, to exercise the extraordinary remedy of an anti-foreign suit injunction.

Accordingly, for the foregoing reasons, the petition is dismissed. Clerk to enter judgment.

SO ORDERED.