Filed 06/30/25

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-01524

| Casella Waste Systems Inc. v. Solmax Geosynthetics, LLC |
|---|

### DECISION ON PLAINTIFF'S SECOND RENEWED MOTION TO STAY ARBITRATION
### (Motion #4)

In this action for declaratory and monetary relief, Plaintiff Casella Waste Systems, Inc. ("Casella") claims that Defendant Solmax Geosynthetics, LLC ("Solmax") sold defective needle-laden geosynthetic clay liner ("GCL") for two of Casella's projects. The parties disagree about whose terms and conditions control the transaction. Casella now moves the Court to stay arbitration proceedings that Solmax initiated in Texas pursuant to its terms. For the reasons set forth below, the Court grants Casella's motion for a temporary stay and will schedule a hearing on the question of whether the parties are bound to arbitrate the disputes in question.

Arbitration is a matter of contract law and the authority of an arbitrator to settle the parties' disputes derives from the parties' agreement to submit the disputes to arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). The question of whether the parties are bound by an agreement to resolve a particular dispute through arbitration is generally for a court of law to decide, particularly when there is a question of contract formation. *See, e.g., Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). The Vermont Arbitration Act authorizes the court to stay arbitration in order to resolve disputes as to whether there is an enforceable agreement to arbitrate, as follows:

> On application to compel or stay arbitration, and on a showing that there is no agreement to arbitrate, the court may stay a commenced or threatened arbitration proceeding. When in substantial and bona fide dispute, the issue of whether there is an agreement to arbitrate shall be forthwith and summarily tried. The court shall order the stay if it finds no enforceable agreement to arbitrate. Otherwise, the court shall order the parties to proceed to arbitration.

12 V.S.A. § 5674(b).

Casella explains that it sent a Request for Proposal (RFP) to Solmax, in which Casella attached the following terms, in pertinent part:

> These terms and conditions of purchase (these "**Terms**") are the only terms which govern the purchase of goods ("**Goods**") and services ("**Services**") by Casella Waste Systems, Inc., its subsidiaries and affiliates ("**Buyer**") from the seller named above ("**Seller**").

Notwithstanding anything herein to the contrary, if a written contract signed by both parties is in existence covering the sale of the Goods and Services covered hereby, these Terms shall prevail in the event of an inconsistency or omission, unless it specifically acknowledged otherwise in the written contract or as provided in Section 28. The purchase order printed above (the "**Purchase Order**"), and these Terms (collectively, this "**Agreement**") comprise the entire agreement between the parties, and supersedes all prior or contemporaneous understandings, agreements, negotiations, representations and warranties, and communications, both written and oral. These Terms prevail over any of Seller's general terms and conditions of sale regardless whether or when Seller has submitted its sales confirmation or such terms. This Agreement expressly limits Seller's acceptance to the terms of this Agreement. Fulfillment of this Purchase Order constitutes acceptance of these Terms.

Exh. 1, Attachment 8, § 1. The terms also provide that "Any legal suit, action or proceeding arising out of or relating to this Agreement shall be instituted in the federal courts of the United States of America or the courts of the State of Vermont in each case located in State of Vermont and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." *Id.*, § 24. Solmax's bid allegedly contained a provision requiring arbitration of disputes. Subsequently, Casella submitted purchase orders to Solmax, which allegedly contained the same terms recited in the attachment to its RFP, and which Casella claims were included in 65 earlier transactions between the parties.

Solmax counters with numerous objections. First, it argues that Casella has actively participated in arbitration since its initiation in October 2024. Casella's answering statement in the arbitration proceeding clearly stated that it did not agree that the parties are required to arbitrate and that it does not consent to arbitration. Exh. A. Solmax states that Casella notified the arbitrator and Solmax at the arbitration's April 7, 2025, scheduling conference that it had filed this action in Vermont that day. Thomas Declaration, ¶ 5. The Court cannot discern how Casella's participation in what appear to have been preliminary proceedings in the arbitration would preclude the relief Casella seeks in this motion to stay arbitration. It appears that Casella has from the onset let its position be known that it objects to arbitration on the basis of the same lack of an agreement to arbitrate that it appropriately argues before this Court.

Solmax next argues that Casella never participated in the Texas case despite not having petitioned that court for a stay or otherwise contested the arbitration there. Again, the Court cannot locate within this argument any specific grounds on which it should deny the present motion. If Casella's terms are binding—which is a question for the Court to resolve—then the appropriate forum for this dispute, for Solmax's claims, and for Casella's counterclaims is not the court in Texas, but rather, this Court. The fact that Casella did not appear in the court proceeding in Texas has no bearing on the present decision on arbitrability of the parties' disputes.

Solmax emphasizes that Casella's sole exhibit, the attachment to its RFP that contains its terms, is not authenticated, and that it has therefore not presented any evidence to support its

motion to stay. The Court need not take a position as to whether Exh. 1 to the pending motion needs to be authenticated in order to meet the statutory requirements for the requested relief, because Casella cured the lack of authentication in Exhs. 1–3 attached to its reply. The motion, moreover, is merely for a sort of preliminary stay pending a hearing and decision under 12 V.S.A. § 5674(b). The statute requires a "showing," upon which the Court is authorized, if there is a substantial and bona fide dispute about whether there is an agreement to arbitrate, to order a stay pending trial of the issue. *See Hulstrunk v. Ultracell Insulation, LLC*, No. 110-7-18 OECV, 2018 WL 8666295, at *5 (Vt. Super. Ct. Sep. 18, 2018) (Harris, J.); *see further In re Hosp. Emp. Grp., LLC*, 234 S.W.3d 832, 835 (Tex. App. 2007) ("In order to successfully challenge the submission of a claim to arbitration, the opposing party must follow a two-step procedure. First, he must initially controvert the movant's claims regarding arbitration by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding. Second, if the party opposing arbitration has presented such controverting evidence, the trial judge must then hold an evidentiary hearing to determine those controverted issues regarding arbitration.").

Solmax argues that the Court lacks personal jurisdiction over Solmax. In making this argument, Solmax fails to show how, if the terms of the RFP (or subsequent purchase orders) are binding on Solmax, then Solmax has agreed to adjudicate disputes with Casella in federal or state court in Vermont. Casella also notes that Solmax has a history of transactions with Casella that could potentially underpin personal jurisdiction in Vermont. Finally, Solmax has separately filed a motion to dismiss to which Casella has not yet responded and is therefore not yet ripe for decision. In any case, the Court declines to deny the motion to stay on the basis of personal jurisdiction since the question of whether Casella's terms are enforceable against Solmax will provide initial clarity about the basis for jurisdiction here.

Next, Solmax contends that Casella's motion to stay is premature because it cannot stay arbitration until it first determines that there exists "no enforceable agreement to arbitrate." 12 V.S.A. § 5674(b). In support of this argument, Solmax points to the *Hulstrunk* decision, in which the trial court first analyzed whether the request met the requirements for a temporary restraining order (TRO) under Rule 65. *Hulstrunk*, No. 110-7-18 OECV, at *6. That aspect of *Hulstrunk*, however, does not apply here, for two reasons: First, in *Hulstrunk*, a party had filed a motion to stay arbitration and a separate motion for TRO. In contrast, here, the Court considers only a motion to stay arbitration under section 5674(b) and no request for a TRO. Second, in Hulstrunk, the court underscored that it considered the motion under section 5674(b) "[a]s a separate ground to issue a stay," because the statute authorizes the court to issue a temporary stay "where it initially determines that it is likely that [there is] no agreement to arbitrate, but there are substantial and bona fide disputes on such issue that can be resolved by a prompt hearing and final order whether to make the stay permanent or order the arbitration to proceed." *Id.*, at 11. Such a stay operates independently of the provision of Rule 65 and is "premised on providing a prompt trial on the preliminary issue of whether the arbitration should proceed." *Id.*

Finally, Solmax argues that its terms and conditions govern. Solmax provides its account of how contract formation occurred between the parties. According to Solmax, Casella sent its RFP which contained the terms described above, and then Casella never included or referenced these terms and conditions again during subsequent negotiations. Solmax submitted its bid via emails, the

second of which contained Solmax's own terms and conditions, which expressly state that Solmax "does not accept and herein rejects any of Buyer's terms and conditions appearing in any PO or separate agreement … which may vary, alter, conflict with, add to, or otherwise change the Quotation, the T&C and the Credit Approval." Exh. E. That document also states that Texas law applies, and disputes shall be submitted to arbitration. *Id.* According to Solmax, Casella then forwarded a "Notice of Award" to Solmax, to which Casella did not attach its terms and conditions.

The issue of which terms and conditions apply and whether Casella agreed in particular to the arbitration terms in Solmax's bid, or whether in submitting its bid, Solmax agreed to be bound by Casella's terms and conditions, is precisely what the Court will resolve following a hearing pursuant to section 5674(b). For now, the preliminary issue is whether Casella has shown that there is a substantial and bona fide dispute as to whether there is no agreement to arbitration, and it has met that threshold requirement.

<u>Order</u>

The arbitration proceeding between Casella and Solmax is stayed pending further order from this court. A copy of this order may be given to the arbitrator. If the arbitrator refuses to comply with the stay, Casella may file appropriate action(s) in courts located in Texas to seek compliance with this order. The stay under 12 V.S.A. § 5674(b) continues in effect until the hearing and decision on whether there is an agreement to arbitrate the parties' disputes.

Within 14 days of this order, the parties shall inform the court how much hearing time they will need for a section 5674(b) hearing. The Court shall then schedule the hearing, and the parties shall exchange witness and exhibit lists two weeks before the hearing.

Electronically signed on June 27, 2025 pursuant to V.R.E.F. 9(d)

_Alexander N. Burke_

Alexander N. Burke
Superior Court Judge